ELIZA LACEY v. J. CLEMENTS AND OTHERS.

1. To give rise to a resulting trust, the money must be paid at the time of the purchase of the land.
2. The domicile of a husband is, in contemplation of law, the domicile of the wife.
3. The mere fact that a married woman was never in Texas during her husband's lifetime does not debar her homestead rights in land purchased by him for homestead purposes. To forfeit her homestead rights, there must have been an abandonment by her of her husband. If her absence from this State was with her husband's consent, her homestead rights are not prejudiced, but will be enforced, after the husband's death, against a purchaser under his administrator. The head-note to the contrary in Meyer *v.* Claus, 15 Texas, 516, is more unconditionally stated than the rulings in that case warrant.
4. It has been the policy of Texas, ever since her Independence, to encourage and secure homestead rights.
5. A widow brought trepass to try title, for land claimed by her as home-

stead. Defendants claimed the land under their vendor's purchase of it at a sale of the administrator of plaintiff's deceased husband. *Held,* that it was competent for the plaintiff to prove that the administrator's sale and deed were based on a Confederate money consideration. This court has never held valid any Confederate money transactions by executors, administrators, guardians, or trustees, except where the creditors or other beneficiaries had themselves affirmed such transactions.

APPEAL from Hardin. Tried below before the Hon. Wm. Chambers.

So far as the facts are involved in the rulings, they are indicated in the opinion of the court.

*W. B. Cline,* and *F. C. Usher,* for the appellant.

*C. L. Cleveland,* and *Moore & Shelley,* for the appellees.

WALKER, J. This is an action brought by the appellant, to establish her homestead right in what is known as the Sour Lake property, embracing about one thousand acres of land, and situated in Hardin county.

The appellees set up title to the property through two deeds; the one, calling for an undivided half of the property, from the administrator of Wm. C. Lacey's estate; the other, calling for the remaining half, from Wm. R. Smith. It appears from the record that Wm. C. Lacey became a transient inhabitant of Texas in the year 1852, being engaged in railroad matters. In 1856, having concluded to make Texas his home, he purchased from different persons the Sour Lake property, which seems to have been held by a joint stock company.

The purchase seems to have been made in part on deferred payments, to secure which notes and mortgages were given. The consideration appears to have been eight thousand six hundred dollars. Between one and two years after the purchase by Lacey, Wm. R. Smith purchased these notes and mortgages, amounting, principal and interest, to four thousand seven hundred dollars. He also purchased an older mortgage over the property, amounting to eleven hundred dollars. Lacey sold

the whole of the property to Smith; the half of which Smith reconveyed to Lacey, at the same time leasing him the remaining half. This conveyance by Lacey to Smith, it would seem, was intended to discharge the claims which Smith held against the property, and after the conveyance of one-half from Smith to Lacey, the latter appears to have held the one-half unencumbered by notes or mortgages.

We see no ground whatever for the application of the doctrine contended for by the attorneys of the appellees. Smith paid no part of the original purchase-money, at the time the purchase was made by Lacey from the stockholders. No subsequent advance of money, after the purchase was complete, can become the subject of resulting trust; the advance of money must be coeval with the execution of the deed, in order to create a resulting trust. (9th ed. Kent's Com., Vol. IV., 338 and Note; Bottsford v. Burr, 2 Johns. Ch. R., 408, 414.)

But it is urged that no homestead right could attach in favor of Lacey whilst the original purchase-money remained unpaid, and Smith becoming the assignee of the notes and mortgages given by Lacey, no right of homestead could attach against him. This is certainly true, and applies to the condition of things up to the date of Smith's own deed to Lacey for the one undivided half of the property. The homestead right could attach, and did attach, to this half of the property.

We now come to the question on which this case impinges. Under all the facts and circumstances, is Mrs. Lacey entitled to the homestead right by virtue of her marital partnership with William C. Lacey? There appears to be no controversy about the marriage, and that of this marriage at least one child was the issue; and it is contended that in order to superintend the education of this child (a daughter), Mrs. Lacey remained away from the State of Texas, though the evidence shows that she was the acknowledged wife of Wm. C. Lacey, and that she remained away from the State of Texas by his consent and approval; nor is there anything to show that entire peace and amity did not prevail between the parties.

The cases of Earl *v.* Earl, 9 Texas, 634, and Myer *v.* Claus, 15 Texas, 518, are supposed to furnish a precedent for the decision of this case. We think, however, there is a material difference in the cases. In the first case, Earl *v.* Earl, the wife had voluntarily abandoned her husband, and continued her abandonment several years previous to his decease. It was held that she forfeited her claim to homestead and her widow's allowance. The court put this case upon the ground of the abandonment of the husband by the wife ; this would have forfeited her right of dower at common law. The reasoning of the case clearly enough implies that an involuntary absence, or an absence not amounting to an abandonment of the husband, or even an absence not continued for years immediately previous to the husband's death, from which it would be inferred that the wife had no intention of returning to her husband, would not have forfeited her right to homestead.

The case of Myer *v.* Claus, is one ·in which the opinion was delivered by the same learned judge who delivered the opinion in Earl *v.* Earl. Here it is claimed to have been decided that a wife who had never resided in the State of Texas, could not impeach a sale by her husband, on the ground that the property sold was his homestead, and, by construction of law, hers also.

This case is not properly understood from the syllabus given by the reporter. The absence of the wife in a foreign country was not explained ; and, besides that, her husband had provided her a homestead, of which she was in possession by the very trade which she sought to set aside. There were strong equities in favor of the defendant in the case, and it does not appear, from the whole decision, that the court intended to modify or change the rule as laid down in Earl *v.* Earl, which seems to turn upon the relations which existed between the husband and the wife at the time of the husband's death, or the alienation of the property ; and this court will adopt the view of the law entertained in the case of Earl *v.* Earl, not regarding the subsequent decision of Myer *v.* Claus, as a departure from that rule.

The domicile of the husband is, in contemplation of law, the domicile of the wife. (Am. Leading Cases, Vol. I., 737; Story's Conf. Laws, 45.)

It has been the policy of Texas, from the date of its independence to the present time, to encourage the acquisition of homesteads, and both her constitutional and statute law exhibit unparalleled liberality in the protection of homestead rights.

Under the colonization laws it was repeatedly held that the voluntary abandonment of a former domicile, and the settlement in Texas by the husband alone, though his family remained away even for years, entitled him to the quantity of land allowed to married men. (See Note 578, Paschal's Digest; Johnson v. Smith, 21 Texas, 726; Russel v. Randolph, 11 Texas, 460; The Republic v. Young, Dallam, 464; State v. Skidmore, 5 Texas, 469.)

The principle involved in these cases we believe was correctly decided, and the analogy with the case at bar is very strong.

One point in the rulings of the District Court especially demands our notice. The appellant offered to prove that the deed from her husband's administrator to A. M. Gentry, was made in consideration of Confederate money. This proof was entirely competent, and it was error to rule it out. We have never held to be valid any transactions in Confederate money by executors, administrators, guardians, or trustees, where there were creditors, heirs, legatees, minors, or beneficiaries concerned, who had not themselves affirmed such contracts. If the deed to Gentry was made in consideration of Confederate money, it will not support a title, and that fact may be inquired into, if necessary.

But in full view of all the facts as proven, and the law of the case, we hold that Mrs. Lacey is entitled to a homestead, to be carved out of the one-half of the Sour Lake property; and so holding, the judgment of the District Court is reversed and the cause remanded.

                              Reversed and remanded.