### JOHN CLEMENTS ET AL. V. ELIZA LACY.

1. DOMICIL — ABSENCE — HOMESTEAD. — The domicil of the husband draws to it the legal domicil of the family. The absence of the wife from the State, not designed as an abandonment of the husband, but with his consent and with intent to make his domicil her future home, will not work a forfeiture of her homestead rights.

2. ABSENCE OF WIFE FROM THE STATE. — The absence of the wife from the State for the purpose of superintending the education of her daughter, works no change in her homestead rights.

3. HOMESTEAD RIGHT SUBORDINATE TO VENDOR'S LIEN. — It has long been the settled doctrine of this court, that a homestead is not acquired against parties holding prior equities and incumbrances, until the title to the land on which the homestead is sought to be established has been perfected by the payment of the purchase-money, and that all liens accruing before the homestead has been

established must be raised, or it will be subject to forced sale for their satisfaction.

4. Same—Mode of payment.—As against homestead rights, in the absence of fraud, the husband has the right to renounce lands incumbered to the holders of such liens.

5. Same.—A purchaser was involved from purchase-money obligations. To obtain money to meet them he sold the entire tract, and soon after took a retransfer for one-half interest in the land. He had resided on the land : *Held,* Against the homestead rights of the widow, that the sale passed title to the entire interest.

6. Mortgage of homestead.—After the purchase-money was paid, a mortgage by the husband would be subject to the homestead rights of his wife, although in fact she had never occupied the premises with her husband ; her homestead rights not having been forfeited.

7. Homestead—Tenant in common.—A homestead may be established on property held by tenancy in common, but not to prejudice the rights of a co-tenant.

8. Same.—A homestead by a tenant in common appropriates the interest of such tenant in two hundred acres, including the residence, and subject to partition with other tenants in common under the general rules governing partition.

Appeal from Hardin.    Tried below before the Hon. H. C. Pedigo.

This was an action of trespass to try title, brought by Mrs. Eliza Lacy, the surviving wife of William C. Lacy, for the recovery of two hundred acres, to be partitioned and set apart out of a tract of one thousand acres, so as to include " Sour Lake," the hotel, and other improvements contiguous thereto.    She alleged that the land was purchased by her husband, William C. Lacy, in the year 1856, from the different shareholders by whom the same had been previously owned, for the purpose of making a permanent home for himself and family; that it was the homestead of said William C. Lacy and the appellee until his death, in 1860, and as such homestead she claims.

Appellant W. R. Smith, by leave of the court, made himself a party defendant, and alleged that almost the entire value of said tract of land consists in said " Sour Lake," a body of mineral water of great curative and medicinal vir-

tues, covering not more than five acres of land, and the hotel and buildings immediately contiguous to the " lake "; that it had been since its first improvement, in 1848, a public watering place and place of resort for the sick and invalid, and the profit arising from said thousand acres of land was derived from said hotel and from the use, enjoyment, and sale of the water; that he, being a physician and appreciating the value of said mineral water, authorized Lacy to buy the land, and furnished him money for this purpose; that Lacy purchased the land for him, and with his money, although he took the deeds in his own name, but, recognizing his right to the property and that it had been paid for by him, Lacy subsequently conveyed it to him, and that he subsequently sold an undivided half of it, and leased the other half to Lacy upon the terms stated in the deed and lease attached as exhibits to his answer; that after Lacy's death the half of said property which was subject to the lien which he held upon it was sold under an order of court by the administrator of his estate to defendant Clements, and conveyed by said Clements to one Gentry, who made a contract with respondent to purchase one-half of said property and to discharge the lien on the half conveyed by him to Lacy, and that to secure the fulfillment of his contract, Gentry had given him a lien on the property.

Smith also alleged that Lacy came to Texas in 1852, and lived in Texas from that time until his death, in 1860; that during all of that time appellee had lived, separate and apart from him, in the States of Louisiana, Ohio, and Illinois; had never lived in the State of Texas, or even been in it until long subsequent to his death, and that she consequently would not be entitled to claim this property as her homestead, even if said William C. Lacy had had such title or interest in the same as was susceptible of being set apart to her as a homestead.

The other defendants answered by a general denial and by adopting the answers of Smith.

It appeared from the statement of facts that the one thou-
sand acres of land had been improved by a company, each
shareholder of which held one-sixth interest in it, and used
as a watering place and place of public resort; that Lacy
purchased, at different times, in the summer of 1856, from
the different parties then owning them, all of the shares, pay-
ing a part of the purchase-money in cash and giving his notes
for the remainder, with mortgages on the property purchased
to secure these payments, and the testimony indicates that
Smith furnished the money to make these payments and to
pay for the improvements which Lacy put upon the property.
Smith discharged the notes and procured the release of the
mortgages.

Lacy, in 1857, executed to Smith a deed for the property,
but subsequently, in 1859, Smith sold him one undivided
half of it, and leased the other half, retaining a lien upon it.
Other facts are stated in the opinion.

A jury was waived and the cause submitted to the judge.
All exceptions, whether to the pleadings or to the evidence,
made by the parties on either side, were overruled, and judg-
ment was rendered by the court in favor of the plaintiff,
against all the defendants, for her homestead, described as
follows: "In Hardin county, being part of the headright of
Stephen Jackson, and part of the one-thousand-acre tract
known as the Sour Lake tract, and being two hundred acres,
embracing the improvements and lake on said one-thousand-
acre tract, the said two hundred acres to be selected by the
plaintiff, and that she have her writ of possession." From
which all the defendants appealed.

*Willie & Cleaveland,* for appellant.—A homestead claim can-
not be set up against the vendor or his assignee until the
purchase-money has been fully paid. It is also a familiar
principle, that if a mortgage is given by the vendee for the
purchase-money simultaneously with the execution of the
deed by the vendor, the better right—the superior title, as

between the parties—remains with the vendor till the pur-
chase-money is fully paid. (Dunlap v. Wright, 11 Tex., 602;
Ballard v. Anderson, 18 Tex., 377; Baker v. Ramey, 27 Tex.,
52.)

Lacy held the land in subordination to the better right and
superior title of his several vendors. When he made default
in the payment of the purchase-money, they could have dis-
possessed him, or any one else claiming under him, by virtue
of that superior right.

The rights of these vendors to the unpaid purchase-money,
and the liens for its security, were taken up by and released to
Smith. He became subrogated thereby to all the rights of the
original vendors. He stood in their shoes till he was paid
the purchase-money. He had the better right—the superior
title. Recognizing these obvious equities, and in fulfillment
of them, as must be conclusively presumed from the facts,
and in fulfillment of what is alleged in the answer of Smith,
(that, in the first instance, the purchase was made for the ben-
efit of Smith, though the deed stood in the name of Lacy,)
Lacy, in 1859, by deed, invested Smith with full legal title,
thus blending therein all the equities before subsisting in
Smith. In doing this, Lacy did voluntarily what a court of
equity would otherwise have compelled him to do.

This deed of 1857 from Lacy to Smith needed not the aid
of the joinder of his wife to give it force and validity. No
homestead right, either of Lacy or his wife, had attached to
the land. The property was bound for the purchase-money
at all events, and the husband alone could discharge the lien
and trust created thereby by reconveyance of it. It was
bound, moreover, by the other and independent equities in
favor of Smith, and the conveyance was good and effective
in either aspect. (Shepherd v. White, 11 Tex., 346; Far-
mer v. Simpson, 6 Tex., 303; Monroe v. Buchanan, 27 Tex.,
242; White v. Shepperd, 16 Tex., 172.)

II. A homestead right cannot be carved out of land held
in joint tenancy or by tenancy in common. (Wolf v. Fleisch-

acker, 5 Cal., 245; Reynolds *v.* Pixley, 6 Cal., 165; Giblin *v.* Jordan, 6 Cal., 416; Kellersberger *v.* Kopp, 6 Cal., 564; Bishop *v.* Hubbard, 23 Cal., 518; Elias *v.* Verdugo, 27 Cal., 419; Seaton *v.* Son, 32 Cal., 481; Thurston *v.* Maddocks, 6 Allen, (Mass.,) 429; West *v.* Ward, 26 Wis., 580.)

III. The record shows that William C. Lacy came to Texas in 1852, and that he remained here, with the exception of a few short and temporary absences, either on business or for pleasure, until his death, in the spring of 1860, and that Mrs. Lacy, the appellee, was never in the State until long after his death,—after the sale made by Lacy's administrator of the property in question and the intervening rights of the purchaser thereof had attached.

The absence of the appellee from the State is attempted to be explained and accounted for, by the statement that her residence was elsewhere, with the consent and approbation of her husband, for the purpose of being with and superintending the education of their daughter while she was at school in New Orleans.

It does not seem to us, however, that the question for consideration should be so much whether her absence from the State was with the consent and approbation of her husband, and to carry out their domestic views and arrangements, however laudable, but rather whether it is within the spirit or policy of our law to confer homestead exemptions upon families who have never come within the State. Can a married man, who has resided in the State for years without having brought a single member of his family within it, occupying, so far as society and the general interest of the community are concerned, just the same position as any other citizen who has no family, be entitled to an exemption intended for the benefit of families? Or shall it, after the husband's death, be given, at the expense of the citizens of the State, to his wife, who never came to the State until she did so to make this claim? On the contrary, it has been expressly denied and repudiated in at least one decision of this court. (Meyer

*v.* Claus, 15 Tex., 518; Earle *v.* Earle, 9 Tex., 631,—and indirectly and inferentially in others; Trawick *v.* Harris, 8 Tex., 312; Jordan *v.* Godman, 19 Tex., 273; Cary *v.* Tice, 6 Cal., 626; Geary *v.* Eastabrook, 6 Cal., 458.)

The wife, as has been held by this court, in case of the absence or abandonment by the husband, may sell the community property. It seems equally appropriate, and would, indeed, be frequently to the interest of the family, if not absolutely necessary, that the husband should sell such property in the absence from the country of the wife, though he may have once intended to have made it their home when it should suit them for her to move to and live upon it. (Wright *v.* Hays, 10 Tex., 130; Fullerton *v.* Doyle, 18 Tex., 3.)

*Henry Cline, W. B. Cline,* and *F. C. Usher,* for appellee, cited and discussed Sossaman *v.* Powell, 21 Tex., 664; Bassett *v.* Messner, 30 Tex., 610; Kleberg *v.* Bonds, 31 Tex., 611; Betsford *v.* Burr, 2 Johns. Ch., 408; Boyd *v.* McLean, 1 Johns. Ch., 582; Miller *v.* Thatcher, 9 Tex., 482; Mead *v.* Randolph, 8 Tex., 191; Cuney *v.* Dupree, 21 Tex., 211; Story's Const. Law, p. 45; 1 Am. L. C., p. 757; Paschal's Dig., art. 578; Johnston *v.* Smith, 21 Tex., 726; Russell *v.* Randolph, 11 Tex., 460; Const. of Rep. of Tex., sec. 10; Republic *v.* Young, Dall., 464; State *v.* Skidmore, 5 Tex., 469; Stone *v.* Darnell, 20 Tex., 11; Franklin *v.* Coffee, 18 Tex., 415; Gouhenant *v.* Cockrell, 20 Tex., 97; Dixon *v.* Dixon, 4 La., 191; Cole *v.* Cole, 7 Mart., (N. S.,) 42; Wheat *v.* Owens, 15 Tex., 243; Meyer *v.* Claus, 15 Tex., 518; Earle *v.* Earle, 9 Tex., 634.

BONNER, ASSOCIATE JUSTICE.—In this case, the plaintiff below, (appellee here,) Eliza Lacy, as the surviving wife of William C. Lacy, deceased, sues for her homestead right in certain property in Hardin county, including what is known as "Sour Lake." The defendants below resist her claim on the following grounds, substantially:

1. That the plaintiff had never resided in Texas, and that

thereby she had forfeited any homestead rights to which she might otherwise have been entitled; and that the sale of this property by the administrator of the estate of William C. Lacy, under which they claim, was valid.

2. That William C. Lacy had never acquired such full, legal, and equitable title to the land out of which plaintiff claims her homestead, as would give her such right therein, for the alleged reason, that the same was incumbered with claims against it for the purchase-money; and that the money for its purchase had, in the first instance, been advanced by William R. Smith, and was consequently held by Lacy in trust for him.

3. That, in any event, William C. Lacy had only one-half undivided interest in the property, and that plaintiff could not set up the exclusive claim to the Sour Lake and the improvements, this being that part of the tract which gave it peculiar value.

The case was before this court on a former appeal. (Lacey *v.* Clements, 36 Tex., 661.) By the subsequent decree of the District Court, from which the present appeal is taken, the plaintiff was adjudged two hundred acres of land as and for her homestead, to be selected by her so as to embrace the lake and improvements.

There is no controversy but that the plaintiff never came to Texas until some years after the death of the husband— she claiming to have remained away, with his consent, to superintend the education of their daughter, and subsequently by reason of the late war between the States.

In the case of Earle *v.* Earle, 9 Tex., 630, it was held, that the voluntary abandonment of the husband by the wife, without his consent, and without good cause, for several years immediately preceding his death, would forfeit her claim to the homestead.

In the case of Russell *v.* Randolph, 11 Tex., 460, where the husband, who had come to Texas alone, and after having arrived here determined to make this his home, died before

the family came, it was held, that the fact that they were not here would not defeat their right to his grant of land as a colonist.

In the case of Henderson *v.* Ford, 46 Tex., 627,—where the husband married in the State of Alabama in 1863, in contemplation of a permanent residence in Texas, having then a homestead here, which he had previously authorized his agent to sell, and afterwards, in the fall of that year, returned to Texas alone, and in a few months thereafter effected a sale through his agent, his wife subsequently, in 1865, joined him here, and remaining until his death and for two or three months thereafter, and never having in fact occupied the homestead,—it was held, that she was entitled to it as against the vendee of the husband.

From the above and the direct authority of this case on the former appeal, (36 Tex., 661,) we deduce the familiar principle, that the domicil of the husband draws to it the legal domicil of the family; and further, that the mere absence of the wife from the State, when not designed as an abandonment of the husband, but with his consent and with the intention to make his domicil here her future home, will not work a forfeiture of her homestead rights.

In the present case, the evidence tended to show that the absence of the plaintiff was for a legitimate purpose and with the consent of the husband, and that it was the fixed intention that she should come to Texas and reside with him. This would bring her without the rule of the case of Earle *v.* Earle, 9 Tex., 630, and within that of the other cases referred to, and would not defeat the homestead right. The court having thus found, the judgment on this issue should not be disturbed.

The next inquiry pertains to the title of William C. Lacy to the land out of which the plaintiff claims her homestead.

· The testimony develops two dates of his title from which the right of the plaintiff to a homestead may be considered:

First, on May 13, 1857, at which time William C. Lacy

succeeded in purchasing the title of Josiah W. Pilant to the remaining interest in the Sour Lake tract, by which he was invested with the full legal title to the whole of the same, having previously bought the interests of the other shareholders.

Second, on March 17, 1859, at which date William R. Smith sells to William C. Lacy an undivided half interest in the tract, Lacy having, on July 20, 1857, and subsequent to his purchase from Pilant, conveyed the whole tract to Smith. By this sale from Smith of March 17, 1859, Lacy became reinvested with the legal title to an undivided one-half interest.

Whether the above-named deed from Lacy to Smith was intended as a mortgage only, or was given to discharge a resulting trust in favor of Smith for having advanced the purchase-money, is not shown with that certainty which would warrant the court in considering these propositions, and they do not enter into the decision of the case.

We will first consider the homestead rights of the plaintiff, as based upon the legal title of William C. Lacy to the whole tract on May 13, 1857.

It is contended by the plaintiff that her homestead right attached at that date, and that the subsequent sale to Smith, on July 20, 1857, was not valid as to her, she not having joined in the conveyance.

It is evident, from the testimony, that at this time the land was heavily incumbered with outstanding claims for the purchase-money owing by Lacy. It has long been the settled doctrine of this court, that a homestead is not acquired, as against parties holding prior equities and incumbrances, until the title to the land on which such homestead is sought to be established has been perfected by the payment of the purchase-money, and that all liens accruing before the homestead has been established must be raised, or it will be subject to forced sale for their satisfaction. (Farmer *v.* Simpson, 6 Tex., 303.)

There is much force of reason and sound equity in the opinion of Chief Justice Hemphill, in White *v.* Shepperd, 16 Tex., 172, in regard to the restraint of the husband to dispose of the homestead without the wife's consent, in which it is said: "This restriction applies where the husband has acquired full property in the land, and not where it is charged with preceding equities or incumbrances. These must be discharged, and they have precedence over the rights of the homestead privilege; and the right of the husband to make arrangements in relation to these incumbrances, or to renounce lands thus burdened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right which might arise, if the incumbrances or conditions were ever discharged or removed, unless in cases where the husband is squandering the property, with the fraudulent design of depriving the wife of a homestead."

In the case of Meyer *v.* Claus, 15 Tex., 516, a sale by the husband of partnership improved lots, for the purpose of partition, before the wife came to the State, was held valid as against her homestead rights.

It is not an unreasonable presumption, under all the facts and circumstances of this case, (the incumbrance upon the property, the advancement by Smith of money to relieve in part this incumbrance and that of a mechanic's lien, and the intimate business relationship between Lacy and Smith,) that the intention of the parties in making the deed from Lacy to Smith, on July 20, 1857, and the subsequent reconveyance from Smith to Lacy of a half interest, on March 17, 1859, was to enable Lacy, by a sale of one-half interest in the property, to free it from incumbrance, and to invest them each with an equal undivided one-half interest in the whole tract. This presumption is rendered almost conclusive by the terms of the lease made between them a few days after the date of the last-named deed.

We think, under these circumstances and the authority of the above cases, there being no evidence of any intention to

defraud the plaintiff, that William C. Lacy had the power to make the sale to Smith, and that the homestead rights of the plaintiff were subject to this sale by the husband to discharge prior incumbrances.

The plaintiff's claims to the homestead, must then rest upon the title of William C. Lacy to the undivided one-half interest acquired by his deed from William R. Smith, of date March 17, 1859.

Before further disposing of the case, it may be remarked, that if her homestead rights attached at this time to this undivided interest, the subsequent execution of a mortgage upon the same to pay after-accruing rents, by the terms of the lease between Smith and Lacy, was invalid as against the plaintiff, she not having joined in the same. Besides, it does not appear, even had this mortgage been valid, that the same has ever been foreclosed, the sale by the administrator of Lacy not having been made under a decree to enforce it, but under one to pay debts generally. Notice that plaintiff was the wife of William C. Lacy, was given by the terms of the will, which appears to have been a part of the probate proceedings of his estate.

This, then, brings us to the remaining question in the case, and one upon which there has been considerable diversity of judicial opinion, viz.: Can the homestead interest attach to property held by tenancy in common?

The conflicting decisions upon this subject arise, doubtless, to some extent, from different provisions of the several statutes on the subject of homesteads. We have no statute defining the homestead, though the necessity of such legislation has been repeatedly suggested by the judicial department. One line of decisions, including some by this court, favor the view that a homestead may be established on property held by tenancy in common. (Williams *v.* Wethered, 37 Tex., 130; Smith *v.* Deschaumes, 37 Tex., 429; McClary *v.* Bixby, 36 Vt., 254; Thorn *v.* Thorn, 14 Iowa, 49; Horn *v.* Tufts, 39 N. H., 478; Greenwood *v.* Maddox, 27 Ark., 660;

Hewitt *v.* Rankin, 41 Iowa, 35, 44; Tarrant *v.* Swain, 15 Kan., 146.)   Mr. Freeman, after a review of the authorities upon this subject, says: "But we see no sufficient reason, even in the absence of statutes directly bearing upon the subject, for holding that a general homestead act does not apply to lands held in co-tenancy.   The fact that a homestead claim might savor of such an assumption of an exclusive right as is inconsistent with the rights of the other co-tenant, and that the maintenance of such claim might interfere with proceedings for partition, form no satisfactory reason for denying the exemption.   *   *   *   That he has not the whole, is a very unsatisfactory and very inhumane reason for depriving him of that which he has." (Freem. on Co. and Part., sec. 54.)

Mr. Smyth, in commenting upon the line of decisions above referred to, says: "No satisfactory reason has been assigned why the rule in the foregoing States of Illinois, Iowa, Vermont, Texas, and Arkansas should not prevail, being in harmony with the object and policy of the homestead laws existing in the several States, and with the rule, 'any interest which might be sold under execution.'" (Smyth on Homesteads and Exemptions, sec. 120.)

Mr. Thompson, in his work on the same subject, favors the same view.   (Sec. 188.)   In note 2, sec. 180, this author collects several of the conflicting decisions upon this subject.

Even did we not feel bound by our own decisions, we are of opinion that the homestead right, in a proper case, would attach to property held by tenancy in common, but not to prejudice just rights of a co-tenant.

Should the property be capable of fair and equitable partition, so as both to preserve the homestead and protect the co-tenant, the respective rights of both parties could be easily adjusted.   (Robinson *v.* McDonald, 11 Tex., 385; Williams *v.* Wethered, 37 Tex., 130.)

If incapable of partition, there is no constitutional or other legal objection which would prevent a court of equity from

ordering a sale for the purpose of partition of the proceeds, in analogy to our statutes, and those of other States, authorizing such sales of property of estates, of minors, &c. (Freem. on Co. and Part., secs. 423, 540.)

The testimony shows that William C. Lacy died seized and possessed of an undivided one-half interest in the land in controversy, and had at the time an established homestead thereon, so as to include his joint interest·in that part of the same, with the improvements, known as Sour Lake; and that the property derives its value chiefly by reason of the lake and improvements. The testimony further shows, that, by the terms of the written lease between the parties, he held the same with the distinct understanding of his co-tenant, William R. Smith, that Smith's interest therein should be respected. We are, therefore, of opinion that the plaintiff should be entitled to her homestead interest in the homestead thus designated, but that there was error in so much of the judgment below as awarded to her an exclusive interest therein, for which the judgment must be reversed. But inasmuch as the cause was submitted to the court without the intervention of a jury, and as there is a full statement of facts in the record, and as it seems that the ends of justice would be furthered by a speedy determination of this protracted litigation, and as the appellants have invoked the rule which obtains in such cases, that this court should here enter the judgment which should have been rendered below, it is therefore considered, and so ordered, adjudged, and decreed, that the judgment of the court below be reversed and reformed; that the plaintiff below do have and recover of the defendants below and intervenor, as and for her homestead, an interest of one-half in and to two hundred acres of land to be selected by her, without undue prejudice to the rights of the defendants, so as to include that place, with the improvements, on the tract of one thousand acres described in the record, part of the Stephen Jackson league, in Hardin

county, known as Sour Lake; that, in default of such selection by her within a reasonable time, say by the 1st of June, 1879, the same be so selected by three sworn commissioners, to be appointed by the District Court of said county of Hardin at its first session thereafter; that when said homestead tract shall be selected, the same shall be partitioned by three sworn commissioners, to be agreed upon by the parties, and in case of failure to so agree, then to be appointed by said court, who shall proceed to divide the same into two equal parts, according to quantity, quality, and value, one of which shall be allotted to the plaintiff below, free of the claims of the defendants and intervenor; that in the event the same be incapable of such partition in kind, then that said two-hundred-acre tract be sold by order of said District Court, on such terms as may be agreed upon by the parties, or in case of failure to agree, as in the discretion of the judge presiding may be most to the interest of all parties interested, the proceeds to be then divided; that so much of the decree of the County Court of said county pertaining to the estate of William C. Lacy as ordered a sale of the homestead which may be thus designated, and so much of the proceedings and sales made by virtue thereof, and the subsequent sales made under the title thus acquired, be, and the same are hereby, set aside and held for naught; that appellants recover of appellee the costs in and about this appeal expended, and that appellee recover of them all other costs of suit heretofore incurred; and that of remaining costs to be hereafter incurred, the plaintiff below pay one-half and the defendants the other half, unless some legal or equitable cause should intervene, which in the judgment of the court below should require the same to be otherwise taxed. It is further ordered, that in the event a sale of said property be necessary for partition, further proceedings be stayed until Elizabeth Amanda Stone, only child and heir of William C. Lacy, be made a party. It is further ordered, that this judgment be certified for

observance by the court below, in accordance with the terms hereof.

REVERSED AND REFORMED.

[Chief Justice MOORE did not sit in this case.]