No. 6000.

Page McDannell *v.* M. C. Ragsdale.

1. Homestead Rights of Wife and Children.—The wife and minor children of a man who has left the State and desires that they follow him, retained the protection of the homestead exemption upon the residence while they remained upon it, without regard to the wishes and purposes of the husband living out of the State.

2. ABANDONMENT OF HOMESTEAD.—A wife with whom the husband leaves his minor children on leaving the State may remain upon that homestead. Her occupancy of the homestead secures exemption; nor is the exemption lost by the desire and request by the husband that the wife should join him without the State; nor is it lost by the wife attempting to sell the same.

3. SAME.—As the creditor has no right to the homestead as a fund from which to make his debt, there would be no fraud in the wife and family remaining upon their homestead until it could be sold, although the sale should be proposed as a means of defraying the expenses of joining the husband and father without the State.

APPEAL from Tom Green.    Tried below before the Hon. Wm. Kennedy

The facts are given in the opinion.

*Neill & Friederich* and *Fisher, Townes & Fisher*, for appellant: 1.    The husband as the head of the family has the unqua' fied right, if he acts in good faith, to abandon the old hon.. stead and acquire a new one, and the subsequent acquired home becomes *eo instanti* the home of the wife and family.  (Clements v. Lacy, 51 Texas, 157; Woolfolk v. Rickets, 48 Texas, 37; Slavin v. Wheeler, 61 Texas, 658; Ranney v. Miller, 51 Texas, 269; Smith v. Uzzell, 56 Texas, 318; Holman v. Smith, 39 Texas, 361; Pepper v. Smith, 54 Texas, 119; Jordan v. Godman, 19 Texas, 273; Shyrock v. Latimer, 57 Texas, 675; Wynne v. Hudson, Texas Law Review, No. 13, p. 202, March 30, 1886.)

2.    The court erre d in its charge wherein it limits the effect of the abandonment of the homestead by the husband as stated in section three of said charge by the matters and qualifications set out in section four of said charge.

The charge of the court must not be inconsistent and the issues must be so presented as not calculated to confuse and mislead the jury, and if such is the result it is an act of "commission" in the charge that entitles appellant to a reversal.  (Barnett v. Logue, 29 Texas, 289; Ruffier v. Womack, 30 Texas, 339; Thompson on Charging Jury, sec. 56 and 39, 63, 71 to 76.)

3.    If the land in controversy was colorably held by Weber's wife and family as their homestead after it had been abandoned for the purpose of protecting it from sale under execution by the creditors of Weber, such holding would be a fraud upon the creditors.    (27 Texas, 133, Jones v. Trammell; 60 Texas, 140, Baines v. Baker.)

The court erred in refusing the special charges asked by plaintiff, upon the testimony relied upon by him as showing that Weber had acquired a new homestead in Arizona prior to the levy of the execution.

One of the refused charges is: The husband is the head of the family, and that in the exercise of his judgment he can, if he acts in good faith to his wife and family, acquire a new home and domicile, and such new home and domicile becomes that of his wife and family, and *eo instanti* operates as an abandonment of the old home, and makes the same subject to the debts of the husband, and no possession by the wife of the old home after the acquisition of said new one will protect it from creditors. (Baines v. Baker, 60 Texas, 139; Clune v. Upton, 56 Texas, 322; Baird v. Trice, 51 Texas, 556; Whittenberg v. Lloyd, 49 Texas, 640; Cox v. Shropshire, 25 Texas, 114; Allison v. Shilling, 27 Texas, 454; Darst & Jones v. Trammell, 27 Texas, 132, and Thompson on Homesteads, secs. 184 and 279."

*W. A. Wright* and *West & McGown* and *Walton, Hill & Walton,* for appellee:

First. If there was any error in the charge complained of, it was in appellant's favor.

Second. The husband can not by his own abandonment, and without procuring another homestead, deprive the wife who is living upon a homestead already dedicated, of her exemption.

Third. To subject the homestead property to the debts of the husband while the wife is living upon it with her children claiming the same as her homestead and without any permanent home being provided for her in another place by her husband, would be a fraud upon the wife's homestead rights.

Fourth. The wife can not be forced to alienate her homestead by abandonment.

Mrs. Weber, with her five minor children, remained on the land in San Angelo until she sold it in September, 1883. She told the sheriff at the time of the levy that it was her homestead. She said she could not have joined her husband without selling it, Weber at the time being notoriously insolvent. Weber had no new homestead; had purchased an adobe house and some furniture on land leased from the railroad company. (Gouhenant v. Cockrell, 20 Texas, 96; Smith v. Uzzell, 56 Texas, 318, 319; Jordan v. Goodman, 19 Texas, 275;

Stuart v. Mackey, 16 Texas, 58; Cox v. Harvey, Posey's Unreported Cases, 268.   Intent to abandon not sufficient, Inge et al. v. Cain, 65 Texas, 81.)

WALKER, ASSOCIATE JUSTICE.   The question involved here is whether the wife and minor children of a man who has left the State and desires that they follow him still retain the protection of the homestead exemption while they remain upon the homestead left by the husband and father.

It has been held that one family is not entitled to exemption for two homesteads at the same time; and that where two places of residence are owned by the head of the family within the State, that the husband as head of the family can designate which of the two shall be the home of the family, thus selecting the homestead and designating the place of exemption. (39 Texas, 362, Holliman v. Smith; 51 Texas, 158.)

It is also settled that the creditors of the husband have no interest in the homestead as property, which may be used in payment of his debts; and, therefore, that in the sale or disposition of it there can be no fraud against the creditor.  (25 Texas, 123.)

It may also be assumed that if the wife determined to do so she can not be prevented from remaining in the State and continuing the occupancy of the home after the husband has left, whatever may be the purposes or success of the husband after leaving the State.

It would follow then that until the wife shall follow the husband, or part with the home to which the laws extend their protection, the creditor of the husband could not interfere with her rights and that of her children in the homestead.  Upon the husband's leaving the State she became the head of the family. (41 Texas, 648; Kelley v. Whitmore, and cases cited.)

In this case the ability of the wife to join her husband with their children seems to have depended upon a sale of the property.   Her wish to sell and desire for future abandonment should not render it subject to seizure and sale, while so occupied in fact.

The court submitted the issues raised by the testimony in charge.   "If you find from the evidence that Joseph Weber (the husband), in good faith, without any intention to defraud his wife in her homestead rights, left his homestead on the land in controversy prior to June 4, 1883 (the day of the

levy under which plaintiff claims), with intent never to return to it and occupy it as a homestead (unless he left with the intention in subdivision No. 4 of this charge), you will return a verdict for plaintiff. In this connection you are instructed that no matter how long or how far Weber may have wandered from his homestead (if he had one), yet, if he had an intention to return thereto it would not constitute an abandonment of the homestead. Moreover, before the homestead character will be lost it must be undeniably clear and beyond all reasonable ground of dispute that there has been a total abandonment without an intention to return and claim the exemption. But it is not necessary that another should be acquired provided there is the intention to abandon and an actual abandonment of it."

4. "If you find from the evidence that Joseph Weber did leave his homestead and emigrate to the Territory of Arizona, with the intention never to return and claim it; yet, if you find that he intended his family to remain on said homestead until it could be sold and the family did so remain until the fourth day of June, 1883, then there was not such an abandonment of the homestead as would render it liable to execution, and if you so find you will return a verdict for defendant."

These propositions are as favorable to the plaintiff's case made in the testimony as the law, as held by our courts will permit.

Holding as we do that the homestead once acquired is not abandoned while the wife and children are, in fact, residing thereon, it was not error in the court to refuse the instructions asked as to the effect of the husband's acts and purposes for the future after he had left the State, upon the homestead character of the premises occupied by his family in Texas. The acts and declarations of both the husband and wife on the subject of removal to Arizona were properly in evidence. There would be no fraud in the purpose, if shown, that the wife and children should remain until they could effect a sale of the homestead. She had the legal right to do so. There is some conflict in the testimony. If the witness Westbrook is to be believed, the wife in fact had followed her husband to Arizona before the levy. This would have authorized a verdict for the plaintiff. This testimony is contradicted, and the jury were the judges of the credibility of the witnesses examined.

The case, as it appears from the testimony, is that the hus-

band left Texas to seek a location—after wandering for months he stopped at a railroad village in Arizona; bought property with his wages, and wrote to his wife to join him. She had remained with her children and did not have the means to join her husband without making sale of the homestead. At the time of the levy she and her children were living on the premises levied upon. The husband was insolvent, having failed in business as saloon keeper in Texas. In Arizona he had taken up his former trade as barber. On hearing of her husband's wishes, as to change of residence, the wife put the place into hands of land agents for sale, intending to leave as soon as she could sell.

, The lot was levied upon June 4, 1883, and sold October 4, thereafter. The sale and conveyances, down to plaintiff, were regular. The defendant, Ragsdale, claimed under a deed from Weber and wife, acknowledged by the wife September 4, 1883. She and her family resided on the lot until September 11, 1883. Ragsdale was her son-in-law, and knew all the facts. The premises being, in fact, the residence of the family at the levy; and the parties, Weber and wife, having conveyed to defendant, by the forms of law, there was no injustice done by the verdict and judgment. Finding no error the judgment below is affirmed.

*Affirmed.*

Opinion delivered May 29, 1888.