MARY B. AND R. D. WELBORNE v. JOHN DOWNING, SR.

No. 6199.

1. **Lawyer Taking Depositions.**—It was not error to refuse a motion to suppress depositions taken by a notary public who subsequently was employed as an attorney in the case and by the party in whose behalf the depositions were taken.

2. **Argument of Counsel.**—It is no ground for reversal that an attorney for appellee in argument to the jury in urging his client's claim to the property as his homestead said "that he had heard a lawyer say this morning that appellee was entitled to the property in controversy if he left so much as a blanket there."

3. **Depositions—Answer Properly Excluded.**—In answer to a question a witness whose depositions were taken replied: "From conversations had with Downing upon the subject I have been led to believe that it was not his intention to remain permanently in Texas after his return from Montana." *Held,* the answer was properly excluded from the jury.

4. **Verbal Charge to Jury.**—A plaintiff claiming under execution sale on the trial showed his purchase and deed. Defendant then showed by testimony that he and his family had resided thereon as their homestead. No evidence of abandonment was given. The court verbally instructed the jury to find for the defendant. *Held,* such instruction was proper.

5. **Homestead—Abandonment.**—See charges held to correctly state the law as to abandonment of the homestead and the proof of it.

6. **Abandonment of Homestead.**—Admitting that when a citizen of this State leaves it and acquires a residence elsewhere he can no longer claim the benefit of our exemption laws, and that his previously existing homestead will thereby become subject to forced sale, it still would not lose its exemption merely by the commencement of its abandonment. Even if the heads of the family had left with intent to acquire a new homestead, but leaving their minor children in the old homestead to follow at a later day, the exemption would remain in their favor until the time contemplated for their removal.

APPEAL from Clay. Tried below before Hon. B. F. Williams.
The opinion states the case.

*R. D. Welborne* and *Hazelwood & Templeton,* for appellants. —1. An attorney in a cause should not be allowed to act as notary public and take depositions for his client to be used on the trial of said cause, and especially his client's own deposition.

2. The court erred in permitting L. C. Barrett, attorney for appellee, while addressing the jury to tell the jury "that he heard a lawyer say this morning that appellee was entitled to the property in controversy as a homestead if he left as much as a blanket there."

3. The court erred in refusing to allow the answer of R. P. Saunders, witness for appellants, "that from conversations had by him with John Downing, Sr., upon the subject (meaning the subject of his, Downing's, removal and return to Texas) he, witness, had been led to believe that it was not Downing's intention to remain in Texas after his return from Montana," because said answer was proper evidence to go to the jury.

4. Appellants having made out a prima facie case by proving a valid title under execution sale, and both parties having rested, appellee up to that time having refused to offer any testimony, it was the duty of the court to instruct the jury to find for appellants, and it was certainly error for the court at this stage of the proceedings to instruct the jury verbally to return a verdict for appellee. [But see opinion.] Rev. Stats., art.

1317; Hardy v. De Leon, 5 Texas, 211; Levy v. McDowell, 45 Texas, 220; Hedgepath v. Robertson, 18 Texas, 858.

5. Where property has once been the homestead of a family and they have left and moved to another State or Territory, and after said removal the property is levied upon under execution to satisfy a judgment against the head of the family, the mere fact that the party had once occupied the premises as a homestead is not sufficient to put the burden of proof on the party claiming under the execution sale to show that it was not the homestead at the time of the levy of the execution, but in such a case the burden is on the party setting up the homestead rights to show that the property was still his homestead. Thomp. on Home., sec. 284, pp. 237, 238; Jarvais v. Mol, 38 Wis., 448; Harper v. Forbes, 15 Cal., 202; Cook v. McChristian, 4 Cal., 25; Taylor v. Hargous, 4 Cal., 272; Moss v. Warner, 10 Cal., 297.

6. Taking all the evidence together it shows clearly that appellee had abandoned his homestead in Texas at the time of levy of execution and sale thereunder and that appellants are entitled to recover the land. Long v. Steiger, 8 Texas, 460; Edrington v. Kiger, 4 Texas, 89; Davidson v. Edgar, 5 Texas, 492; Taylor v. Ashby, 15 Texas, 50; Patton v. Evans, 15 Texas, 363; Chandler v. Meckling, 22 Texas, 36; Cox v. Shropshire, 25 Texas, 113; McMillan v. Warner, 38 Texas, 415. Thomp. on Homesteads, sec. 263, and authorities there cited; secs. 265, 266, 267, 269, 270, 274, 279, 281, 284, 285, and authorities cited on these sections.

*Swan & Bomar*, for appellee.

HENRY, ASSOCIATE JUSTICE.—Mary B. Welborne claims title to the land in controversy as a purchaser at forced sale.

The defendant, John Downing, Sr., claims that it was his homestead, and as such exempt from forced sale at the date of the levy and sale.

Downing with his wife and four minor children having resided on the premises for several years before, he, in the year 1884, with his wife and two of the children went to Montana Territory and remained there until the levy and sale were made, after which he returned and again resided on the place for a short time, when he sold it and returned to Montana, where he now resides. The levy and sale were made during his first absence. When he left the place in 1884 with the purpose of going to Montana he left part of his household effects and two of his minor children in his residence. A married son moved into it when he left.

The controlling question in the case is whether when he left the premises in 1884 it was with the purpose of making his permanent residence from that time in Montana.

Upon this point the evidence is conflicting. The evidence that he did not intend to again reside on the place consists of declarations of his own

to that effect.    The evidence that his removal was declared and intended to be only temporary and contingent consists mainly of his own testimony introduced at the trial.

The jury accepted his version of the fact.    A motion was made to suppress the deposition of John Downing, Sr., because the notary public who took it afterwards appeared as an attorney for him in the case.    It does not appear that he was the attorney of defendant when he took the deposition, and the court overruled the motion on the gound that it was made to appear that he did not become an attorney in the cause until after the deposition was taken.    There was no error in overruling the motion.

It is assigned as error that the court permitted one of defendant's attorneys to say in his address to the jury "that he heard a lawyer say this morning that appellee was entitled to the property in controversy as a homestead if he left so much as a blanket there."

We do not think the cause ought to be reversed for the use of this language.    Jury trials would be a lamentable failure if they are subject to be at all influenced from such a cause.

A witness for plaintiff whose deposition was taken in answer to an interrogatory by plaintiff stated:   "From conversations had by me with John Browning, Sr., upon the subject I have been led to believe that it was not his intention to remain permanently in Texas after his return from Montana."    The defendant objected to and the court excluded the evidence.    The evidence was properly excluded.

It appears that after plaintiffs had introduced their evidences of title under the execution sale, which unexplained would have been sufficient to show title in the wife, and after defendant had proved that he had occupied the premises as a homestead before the sale, no evidence upon the question of its abandonment having been then offered, both parties rested and announced that they would not argue the cause, on which the court verbally instructed the jury to return a verdict for the defendant. On objection being made the court allowed the case to be reopened and proceeded with, both parties offering additional evidence, and after argument a written charge was given.

A bill of exceptions was taken and the verbal direction of the court to the jury is assigned as error.    The objection is not good.    As the case then stood a direction to return a verdict for the defendant was the right thing to do.    Plaintiff certainly has no just cause of complaint for what was done.    Various errors are assigned with regard to charges given and refused, which we think are not tenable.    The court in substance charged that if the premises were at the time of the levy of the execution the homestead of defendant the verdict should be for him, but if they were not then defendant's homestead the verdict should be for plaintiff.

That property once a homestead if abandoned thereby becomes subject to forced sale, and that it becomes so subject "when left or abandoned

with a fixed intention never to return to and claim it as a homestead." That in this case it devolved on defendant to show that the property was his homestead before it was levied on, after which it devolved on plaintiffs to show its abandonment as a homestead.

We think the charge was correct as applicable to the issues in the case, and that in so far as the charges requested by defendant contained a correct exposition of the law they were correctly refused because sufficiently embraced in the charge given.

The other errors assigned relate to the failure of the court to grant plaintiffs a new trial on the ground that the evidence showed clearly "or at least by a large preponderance of the testimony" that the property in controversy was not the homestead of appellee at the date of the levy of the execution.

Upon the question of fact as to the intention with which the defendant left the property before the execution was levied, our believing that the weight of the testimony supports plaintiffs side of the case would not lead to a reversal of the case.. There is to say the least sufficient evidence upon that issue to justify and sustain the verdict.

In addition to that we are not prepared to say that, whatever may have been defendant's intention when with part of his family he left his home as to its permanent abandonment, the fact that he left some of his family and a portion of his household goods remaining in it would not keep the abandonment from being complete and continue the protection, at least for a reasonable time or until another homestead was acquired.

Admitting that when a citizen of this State permanently leaves it and acquires a residence elsewhere he can no longer claim the benefit of our exemption laws, and that his previously existing homestead will thereby become subject to forced sale, it still would not lose its exemption merely by the commencement of its abandonment.

Upon the theory of plaintiffs' evidence in this case that Downing's removal was intended to be permanent, it is still clearly developed that it was never intended that the two children who were left and the remaining household goods should be removed before the spring of 1885, unless the property should be sold before that date. The levy and sale under which plaintiffs claim were made long before that time arrived.

Our Constitution protects the homestead of a family, and we do not think it contemplates that even when it is being abandoned and the process of removal is going on that the fact that the heads of the family have gone before will deprive it of the protection of the law in favor of their children who still remain in it with the purpose of following their parents at a later day.

In any view of the evidence that condition and that purpose appear to have existed in good faith and honestly in this case at the date of the levy and sale under which plaintiffs claim. The judgment is affirmed.

Delivered April 19, 1889.                              *Affirmed.*