MARKLEY v. BARLOW et al. (No. 6063.)

(Court of Civil Appeals of Texas. San Antonio. June 12, 1918. On Motion for Rehearing, June 25, 1918.)

1. HOMESTEAD ⬦=33 — SUFFICIENCY OF POSSESSION—SOLDIER'S WIFE.

Where husband is a soldier, land may be impressed in the character of a homestead, although the husband and wife never lived together on the land.

2. HOMESTEAD ⬦=181(1)—ABANDONMENT.

To show abandonment of homestead by wife who had not been living with husband, it was incumbent upon defendants not only to establish a separation, but to show that wife left husband and home without good cause and without his consent.

3. HOMESTEAD ⬦=177(1)—ABANDONMENT—ESTOPPEL.

A wife is not estopped from asserting her homestead rights by fraudulent acts of her husband in borrowing money on the homestead, where she did not join him in the fraudulent acts.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Trespass to try title by Rebecca C. Markley against S. M. Barlow, receiver of the estate of John R. Davis, and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Victor Keller and Frank H. Booth, both of San Antonio, for appellant. Hicks, Hicks, Dickson & Bobbitt, of San Antonio, and John A. Valls, of Laredo, for appellees.

FLY, C. J. This is an action of trespass to try title to 116 acres of land in Webb county, instituted by appellant against John H. Davis, S. M. Barlow, receiver of the estate of John H. Davis, and her husband, A. C. Markley, who refused to join her in the suit. She alleged that she was the wife of A. C. Markley; that the land in controversy had been since January 1, 1890, the homestead of appellant and A. C. Markley, and that it had been used as such to September 9, 1915, when A. C. Markley had sought to make a sale of such homestead to said John H. Davis, it being claimed that said Markley had abandoned the homestead on or about July 15, 1915, which pretended abandonment and sale, it was alleged, was a fraud upon the rights of appellant; that her husband and Davis had conspired to defraud appellant out of her homestead and to appropriate the proceeds arising from its sale to pay an indebtedness of A. C. Markley to Davis; that Markley had also conveyed to Davis other property, the separate estate of appellant; that the homestead and said separate estate were conveyed in the same deed of conveyance. Appellees Davis and Barlow pleaded general demurrer, general denial, and not guilty, and A. C. Markley waived process and entered his appearance. The cause was tried by the court, a jury being waived, and judgment was rendered that appellant take nothing by her suit and pay all costs.

The statement of facts in this case shows that the property sued for was bought in 1888, by A. C. Markley, from the city of Laredo, and became the community estate of A. C. Markley and appellant. Immediately after it was acquired A. C. Markley, who was an officer in the American army, constructed a frame house, corral, storeroom, stables, etc. These improvements were afterwards destroyed, but in 1907 he erected a frame house, corral, fence, sheds, stalls, and feedroom. In 1908 he erected a frame house and brick underground tank, and also planted orchard, vegetable garden, and flower garden. A. C. Markley went on the farm to live in October, 1907, and stayed until August, 1908, then went on a visit North, and stayed until February, 1909, and then managed farm, but ate and slept in town of Laredo until about June, 1910, when he went on the farm, claimed to be the homestead, and, except when he left in summer to visit the North, he stayed thereon until May 31, 1914. Appellant lived with her husband at different military posts, from 1902 until 1907, when he was retired from actual service in the army. After living with Markley at Oakland, Cal., in a hotel, he left for a business trip to Arizona and Texas, and appellant went to Philadelphia, where she remained until 1910, when her husband visited her. She then went to sanitariums in Washington, D. C., until 1917. The son of Gen. Markley and appellant went on the farm in 1888, his father having been ordered to Arizona, and appellant lived there with him until about 1890, when she went to her husband at Ft. Thomas, Ariz. The son went back to the farm about 1893, and the father being ordered East in 1895, appellant went back to the farm, where she stayed until 1896, when she joined her husband in Philadelphia. Appellant never occupied any house of their own with her husband in Philadelphia or any other place. She owned a house in Hatboro, near Philadelphia, in which she lived for a short time in 1908. They had no homestead in any place except the one at Laredo, Tex. The marriage relations between appellant and her husband were strained from 1909, but the relation was never severed, and he continued to visit her. She never declared that she would not live with her husband as his wife, and had not abandoned him. Davis testified that Gen. Markley lived on the farm in 1915, and his mules, farm implements, and household furniture were moved off the place after the deed was executed to Davis in September, 1915. After the plans were laid to convey the homestead and the separate property of appellant to Davis to pay debts due him, Gen. Markley wrote a letter asking appellant to live with him on the farm. Efforts had been made by Davis prior to 1915 to get appellant to give a deed of trust on the homestead and her separate

⬦=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

estate, but she refused to give it, claiming it as her homestead and separate estate. Whatever may have been the intention of Gen. Markley in 1908 as to abandoning the farm, he did not abandon it, but held it until he attempted to sell it in 1915. The affidavit made by him as to abandonment in 1908 was made with a view to get money which Davis was to obtain in San Antonio. The farm was not in reality abandoned. On June 18, 1909, appellant sought to designate the farm as a homestead, stating she had no other home. Her affidavit to that effect was recorded June 19, 1909. In an opinion of a certain firm of attorneys of San Antonio, given to Davis on August 25, 1915, in response to a letter written by him, it was stated:

"I understand from you that Mr. Markley now occupies the farm as a homestead, but that his wife has for several years refused to live with him on the farm, but, having abandoned him and the homestead, has taken up her home and is living in another state, and, although urged by him to return to him and the homestead, she refused so to do."

The sole ground on which the attorneys advised that Gen. Markley could dispose of the property without the consent of appellant was her abandonment of him without cause. Both Davis and the attorneys treated the property as the homestead of appellant. The evidence of abandonment relied on was a letter written by her to A. C. Markley, in reply to one written for the purpose of receiving an answer that would furnish that evidence. She replied that the state of her health precluded her living on the farm. About the letter written by him to his wife Gen. Markley testified:

"Mr. Davis knew of my writing the letter and of Mrs. Markley's reply. The purpose of writing the letter was to trap her into a refusal to live with me on the farm, and Davis knew of this purpose."

The evidence in this case clearly discloses that the property in controversy had been made the homestead of A. C. Markley and appellant in 1888, that it had never been abandoned as such, and that they had no other homestead. A. C. Markley, being an officer in the army, could not settle on a homestead in person, but through his wife and son he did occupy it, and as soon as he was placed on the retired list of the army he returned to Laredo, improved the farm, and lived on it as his homestead until he left it in September, 1915. It was recognized as a homestead by Davis and the attorneys who advised him; the latter basing their opinion as to the homestead character having been destroyed on the representation of Davis that appellant had abandoned her husband without cause. That representation was based on a letter obtained from appellant with the purpose that it be used as evidence of abandonment. The evidence clearly shows that a conspiracy existed to deprive appellant, not only of her home, but of her separate estate, but she refused to give it, claiming it tate as well. The transaction showed a fraudulent design upon the part of the husband to deprive his wife of her home and other property.

[1] The land became the homestead in 1888, shortly after it was acquired. Gen. Markley impressed it with that character, and appellant and her son occupied it for two years. Appellant followed her husband, who was moved from one point to another under army orders, but returned to her home in 1895, and then left again in 1896 to join her husband. As soon as Gen. Markley was retired, in 1907, he occupied the premises as his home. The home was never abandoned. The occupancy of the wife and son in 1888 was with the consent of the husband, and that act impressed it with the homestead character. McDannell v. Ragsdale, 71 Tex. 23, 8 S. W. 625, 10 Am. St. Rep. 729; Welborne v. Downing, 73 Tex. 527, 11 S. W. 501. Appellees seem to think that it was utterly impossible to give a tract of land the homestead character unless both the husband and wife live on it at the same time, but this theory is not borne out by the authorities. Nor is the intimation that a soldier, who is being moved under orders from one post to another, cannot create a homestead, a tenable proposition.

In the case of Henderson v. Ford, 46 Tex. 628, an unmarried young man had a home in Texas, which he left in 1861 to join the Confederate army, and authorized his brother-in-law to sell it, but it was not sold, but was cultivated. In 1863 Bohanon, the soldier, married in Alabama, and in the latter part of that year returned to Texas on account of ill health. After the war the wife came to her husband in Texas, but they never lived on the land, and in 1866 Bohanon died. In 1864 Bohanon, without his wife joining in the deed, sold the land. After the death of Bohanon his wife returned to Alabama, and married a man named Ford. Afterwards she sued for and recovered the land of her first husband as her homestead. The court held that the land was not abandoned as a home by Bohanon when he entered the army, and that he and his wife intended to return to Texas and make it their permanent residence, and that the home of Bohanon on his marriage became the homestead of him and his wife. She never at any time lived on the land with her first husband. That case completely answers both contentions of appellees, for Bohanon was a soldier, and he and his wife never lived together on the land.

In the case of Moores v. Wills, 69 Tex. 113, 5 S. W. 677, the wife had never lived on the land claimed as a homestead, and the court held:

"The homestead right may attach, though the wife never moved upon it. It becomes the homestead from the time of its dedication as such by the head of the family."

This court considered the same question in Linares v. Linares, 51 S. W. 510, and reach-

ed the same conclusion. The judgment in that case was affirmed by the Supreme Court. Same v. De Linares, 93 Tex. 87, 53 S. W. 579.

In Clements v. Lacy, 51 Tex. 150, it was shown that William C. Lacy came to Texas in 1852, and bought land known as the "Sour Lake property," and in 1857 he executed a deed to the property to W. R. Smith, but in 1859 reconveyed one-half the property to Lacy, who died in 1860. From 1852 to the time of his death Mrs. Lacy was not living with her husband, but was living in Louisiana, Ohio, and Illinois. She never had been in Texas before the death of her husband. She claimed to have remained away from her husband with his consent. It was held that Mrs. Lacy was entitled to a homestead.

✦ [2, 3] The evidence undoubtedly showed that the land was dedicated by the husband to homestead purposes in 1888; that it was occupied by the wife and then by the husband. There is no evidence of abandonment upon the part of the husband nor of the wife, unless the fact that she lived in another state after 1907 is evidence of abandonment. It was incumbent upon appellees not only to establish a separation between appellant and her husband, but to show that the wife left her husband and home without good cause and without his consent. Earle v. Earle, 9 Tex. 630; Linares v. Linares, 93 Tex. 84, 53 S. W. 579. Appellant failed to prove these necessary facts, and, on the other hand, can be gleaned from the evidence that appellant was away from her husband with his consent and on account of bad health, and a large part of the time she was in sanitariums. She never refused to live with her husband until she received the curt command from him on July 23, 1915, which was written with the knowledge of Davis, in order to obtain a statement that she had abandoned her husband. He swore:

"It is not a fact that Mrs. Rebecca Markley refused to live on the Markley farm with me, except in August, 1915. Mrs. Markley did not refuse to live with me on the farm prior to 1916. She has never declared that she would not live with me as husband and wife."

This statement was not contradicted. She had been in a sanitarium for years, and in answer to her husband's command she said that she could not live on the farm without conveniences on account of the condition of her health. She signed her letter, "Your wife, Rebecca C. Markley." Gen. Markley visited his wife in the North, and if their relations were "strained," it grew out of the fact that he desired to sell her property. The condition of her health was good cause for her stay in the North, and it was evidently with the consent of her husband. The command for her to come to Texas, made in July, 1915, was a mere pretense to obtain a refusal that would fortify the intended sale of her homestead. Gen. Markley testified:

"Later, about June, he [Davis] told me that Denman, Franklin & McGown, lawyers, required an abstract of title of the farm to enable them to give an opinion, and said, 'While you are about it, get an abstract of your wife's lots; we may find something to scare her into letting loose the farm,' or about that."

She was in Laredo most of the month of June, 1915, and her husband saw her a number of times, but did not unfold to her the scheme to sell her homestead and separate property, but asked her to release her claim to the homestead. If the declaration of Gen. Markley, at the time he signed the deed, that he had abandoned the homestead, had evidenced an abandonment, as it did not, it was done in fraud of the wife's rights, and availed nothing. He stated that he did not ask her to live on the farm with him because he did not want her to live there. He was placing her in a cruel position when he wrote the command of July 23, 1915, and when he sold her property he said:

"I felt that it was an outrage to take the property of this aged and infirm woman that she had paid for and owned 42 years."

The declarations made by Markley in 1908 were to defraud his wife, and Davis knew that when he obtained the loan for Markley. Appellant did not join him in his fraudulent acts, and she cannot be estopped thereby from asserting her homestead rights. The homestead right could not be divested by the disclaimer of General Markley. Kempner v. Comer, 73 Tex. 196, 11 S. W. 194.

The authorities cited by appellees do not fit the facts of this case, and could be easily distinguished from this case, if we deemed it necessary. Appellant had not abandoned her husband, but was living in the North on account of her bad health and with the consent of her husband. Her absence did not rob the property of its homestead character.

The judgment is reversed, and judgment here rendered that appellant recover the property described in her petition, with rent at $50 a month from October 1, 1915, and that appellees pay all costs in this behalf expended.

### On Motion for Rehearing.

Appellee Davis recognized the fact that the land in controversy was the homestead of the Markleys, and consulted attorneys as to how the homestead rights could be evaded or destroyed. He tried to obtain Mrs. Markley's consent to the sale, or rather mortgage, because he admitted a year after the deed was executed that there was no intention to convey the title to him, but that he was merely holding it in trust for Gen. Markley. On October 10, 1916, 13 months after the deed was executed, Davis wrote Gen. Markley:

"Your farm is as much yours as it has ever been, and has never been regarded by me except as a matter of trust in my hands."

Afterwards he not only repudiated the trust, but denied the homestead character of the property. He never claimed to own the land until the suit was instituted. Gen. Markley swore:

"It is a fact that my sole and only purpose in declaring that I had abandoned the farm was to enable me to destroy its homestead character, so that I could convey it to Davis without my wife joining in the execution of the deed."

He also testified that he fully intended to return to the farm if his financial condition permitted it. The Markleys had no other home. Appellant had a house in Pennsylvania, which Gen. Markley never entered, and in which appellant lived for a short time in 1908. Appellees contend, however, that a few weeks residence in a house in Pennsylvania by appellant created a homestead, but deny that her residence for several years, with her son, in a house in Texas, could give it a homestead character, although it was bought for a home, and was used by appellant and husband as a home. Davis admitted that appellant claimed the farm as her homestead when he sought to obtain a deed of trust on it. He must have written his attorneys in 1915 that the farm was a homestead, for in replying to his letter they said:

"I understand from you that Mr. Markley now occupies the farm as a homestead, but that his wife has, for several years, refused to live with him on the farm."

The evidence showed that she had never refused to live with her husband on the farm, and always regarded it as her homestead. She had designated the land as her homestead in writing, and had it recorded in Webb county long before Davis attempted to obtain a mortgage on it from her husband.

The parties had never separated as man and wife, and each of them claimed the property as a homestead.

There is no merit in the motion, and it is overruled.