## J. W. HENDERSON ET AL. *v*. CARRIE E. FORD ET AL.

1. HOME—RESIDENCE.—The home or residence of a single man, with his servants, upon land owned by him in 1860, and until he entered the Confederate army in 1861, was not abandoned by his absence in the army.

2. SAME.—Nor was his authority left with an agent to sell the land, an abandonment.

3. DOMICILE—MARRIAGE.—Upon the marriage of a resident of Texas with a woman in Alabama, with the intention entertained to make Texas their residence, the domicile of the wife became that of her husband.

4. SAME—HOMESTEAD RIGHTS.—Upon the marriage, in another State, of a man who has a residence upon land in Texas belonging to him, the wife's domicile being fixed in Texas by the marriage, she becomes entitled to homestead rights in the Texas home of her husband.

5. SAME—REVOCATION OF POWER TO SELL.—A power of attorney to sell land, the home of a single man, is revoked by his marriage.

6. HOMESTEAD.—A single man resided on his own land in 1860, living with his slaves in cabins, and cultivating a field, and until September, 1861, when he entered the Confederate army and left the State, leaving an agent, authorized to manage his affairs and to sell the land. He married, in 1863, in Alabama, in contemplation of a permanent residence in Texas, and in the fall of that year, from ill health, returned home, and in a few months contracted for the sale of his said residence, and effected the sale through the attorney appointed by him on entering the army. The wife joined her husband in Texas, in 1865, remaining with him, moving from place to place with his relatives until his death in 1866, and returned to Alabama two or three months after the death of her husband, having no other homestead: *Held,* That the widow was entitled, as against the vendee of her husband, to homestead rights.

APPEAL from Fort Bend. Tried below before the Hon. Livingston Lindsay.

In 1860, Drury B. Bohanon became the owner of a tract of 328 acres of land in Fort Bend county. He inclosed a field of twenty-five acres; erected four or five cabins thereon; was a single man, and resided with his negroes on the place, cultivating it until September, 1861, when he joined the Confederate army. When he left, he empowered his brother-in-law, Dr. Prince, to sell the land, and to manage his business in Texas. The farm was cultivated by Bohanon's negroes, under the control of Dr. Prince. Bohanon married in Selma, Alabama, and in the latter part of the year 1863 returned to Texas on account of ill health, having consumption, leaving his wife in Alabama. After the close of the war, the wife came alone to Texas, having been written to by her husband, and walked part of the way, twelve miles, from Indianola, to where her husband was boarding. They lived with Dr. Prince and others, and in Fort Bend county, except a few months in Huntsville, Walker county, where Dr. Prince had removed.

Bohanon died in April, 1866, at Huntsville, at the house of Dr. Prince, of consumption.

In February, 1864, Bohanon, while his wife was in Alabama, and before she came to Texas, sold the land to Henderson and Chapman; he sent Dr. Prince to Houston to get the Confederate money, for which it was sold, and on receiving it, executed a deed, under the power of attorney executed in 1861, to the purchasers.

Bohanon and wife had never occupied the land after their marriage. The purchasers knew of the marriage before the purchase-money was paid and the deed executed. After Bohanon's death, his widow remained in Texas two or three months, and then returned to Alabama. At his death, Bohanon had no other property, and had desired to sell the land for the purpose of joining with Dr. Prince in the purchase of another tract adjoining Prince's farm. At the time of the sale, the premises were in a very dilapidated condition—fences down, and the cabins, made of poles, were in ruins, no one occupying them.

The widow, Mrs. Carrie E. Ford, brought suit against the purchasers for her homestead interest of 200 acres. Pending the suit, she married Rice. On the trial, the jury returned a verdict for her, on which judgment was rendered. A new trial having been overruled, the defendants appealed. The questions discussed in the opinion arise from the application of homestead laws and laws of domicile, to the facts. It is not, therefore, necessary to give any further statement of the pleadings or exceptions, &c., forming part of the record.

*M. W. Garnett* and *F. W. Henderson*, for appellant.

*John T. Harcourt*, for appellees.

MOORE, ASSOCIATE JUSTICE.—All of the errors assigned by appellants for the reversal of the judgment, unless it is the first, are too general and indefinite to require of us any special notice; and while the first supposed error pointed out by the assignment may not be subject to this objection, it is, intrinsically, entitled to no serious consideration. It has not been noticed by counsel for appellants, in their brief, and

we may reasonably conclude that on reflection it was deemed by them to be untenable, and therefore abandoned.

If, however, we can regard the other errors complained of in the assignment as sufficiently definite, and as properly presenting for our consideration the objections to the judgment discussed by appellant's counsel, and upon which its reversal is insisted, we are constrained to say, in view of the numerous decisions of this court upon the subject, that we can see nothing in the record of which appellants have any cause to complain.

It cannot certainly be denied that the land in controversy was the home and residence of appellee, Carrie E. Ford's, former husband, D. B. Bohanon, from the time he improved and moved upon it, in 1860, until he joined the Confederate army, in the fall of 1861. Bohanon was, during this time, a single man, and the dwelling which he occupied was no doubt of a very unpretentious character, and may have been ultimately intended for the occupation of his servants, instead of himself; still, as it is not controverted that he and his servants lived upon the place, it must be admitted, if a man who has no family except his servants, may have a homestead, that he was entitled to a homestead on this land prior to his leaving it to join the Confederate army. There certainly can be no pretense that the possession and occupancy of the place was surrendered by Bohanon when he went to the army. He left his negroes upon it, and they continued upon and cultivated it for him, under the direction and control of his agent and brother-in-law, Dr. Prince, until its sale, in 1864, to appellants. Unquestionably, it cannot be held that the mere fact of one's absence from his home, in the discharge of public duty as a soldier, will operate as an abandonment or forfeiture of his homestead rights. But it is insisted, because Bohanon, when he left for the army, authorized Dr. Prince to sell the place, with the view of purchasing another tract of land adjoining Dr. Prince's land, it must be presumed that he did not intend to return to or continue to live upon this

land, and that he thereby abandoned it as his homestead; and especially so, it is said, as on his final return from the army, some three or four months before the sale, he did not reside upon it, but remained at Prince's.

In response to this, it will suffice to say, that it may be conceded that Bohanon wished to sell this land for the purpose of purchasing another tract which he regarded as more desirable; and that he hoped and expected that his agent would be able to effect a sale of it for him before his return to the State. But certainly this does not import an intention to abandon his home unless it should be sold; and evidently, it cannot be held, without coming in conflict with the entire current of the former decisions of this court, that the mere fact of a man's contemplating the sale of his homestead prior to or at the time of his marriage, or that authority previously conferred upon an agent to sell it, is unrevoked if it is still his homestead at the time of his marriage, will authorize him to sell it, either in person or by his agent, without his wife's joining in the conveyance. And as Bohanon was married previous to his final return from the army, if the homestead rights of his wife had attached, he evidently could not acquire the right to alienate the homestead, without his wife's consent, by temporarily abandoning it and residing elsewhere for the short time he was here before the sale. But aside from this, the testimony does not warrant the inference that his failure to return to and reside upon the place was because of its having been abandoned as his home and permanent place of abode, unless he should sell it, but that he staid at Dr. Prince's on account of his health and for medical treatment.

There being no just ground to infer that Bohanon had abandoned his home upon the land previous to his marriage, and there being no evidence to authorize the inference that he contemplated, either before or after his marriage, a removal from Texas—while, on the contrary, it clearly appears that the contract of marriage, both with him and his wife,

was made in the contemplation of a permanent residence here,—their marital rights in the courts of this State, at least, must unquestionably be construed and determined by our laws. (Story's Confl. of Laws, secs. 194–200.)

It follows, as a necessary consequence, as Mrs. Bohanon did not join in the deed to appellants, it was inoperative and void against her, to so much of the land as was included in the homestead, unless she is in some way estopped or precluded from controverting it. By the marriage, as has been said, Mrs. Bohanon acquired a domicile in Texas. Her temporary absence, with the consent of her husband, evidently did not deprive her of the rights to which she was thereby entitled. And especially, as it is shown that she came here as soon after her husband as it was reasonably practicable for her to have made the trip. Though she was not in the State at the time appellants purchased the land, when they accepted the deed and paid the purchase-money, they knew that Bohanon was a married man. The fact that Henderson says he did not think, and does not now believe, (*i. e.*, at the date of the trial,) from the appearance of the place, that it was a homestead, cannot be regarded of any consequence, without repudiating the doctrine recognized by this court in all its former decisions upon this subject. The facts which came to his knowledge were fully sufficient to have put him upon inquiry, and had he endeavored to do so, it cannot be doubted that he might easily have ascertained that Bohanon resided on the land when he joined the army, and had not abandoned it or acquired any other home previous to his marriage.

As the land was sold by her husband before Mrs. Bohanon reached Texas, the fact that she did not go upon or reside on it is of no moment whatever. A wife is not required to desert or separate herself from her sick and dying husband, on penalty of forfeiting the home secured to her by the Constitution and laws.

The only remaining objection to appellee's right to a judgment is her removal from the State after Bohanon's

death, and subsequent marriage to her present husband. If the views which I heretofore entertained with reference to the homestead right as contemplated and intended to be secured by the Constitution and laws of this State to the heads of families, and surviving constituents thereof, had been recognized as correct, I could well see that these objections might be entitled to much weight. But this court has taken a different view of the matter, at least in cases of insolvent estates. (Reeves *v.* Petty, 44 Tex., 249.) And a majority of the court are of opinion, in which I acquiesce, in consideration of the general tendency if not direct determination in previous cases, that as appellee's right as surviving wife had attached, and the sale by her husband to appellants may have operated to prevent her taking possession of the homestead after his death; and as it is not shown that she intended, by leaving the State, as she did, to abandon her claim to it; or that, under the circumstances, her going to reside with her relatives was inconsistent with her subsequent demand; and since it is not made to appear that she has subsequently acquired any other homestead,—her removal cannot be held to bar or preclude her recovery.

And if the widow gets anything more than a usufruct by the homestead right, it is not perceived that the mere fact of her subsequent marriage (without thereby getting another home) pending her suit for its recovery, can deprive her of such right.

The judgment is affirmed.

AFFIRMED.