## CRUTCHER v. SANDERS.

(Court of Civil Appeals of Texas. El Paso. March 14, 1912.)

1. HOMESTEAD (§ 31*)—SEPARATION OF HUSBAND AND WIFE—EFFECT.

A husband abandoned his wife in another state, and, with his children, removed to this state, where he purchased land upon which he lived with the children for about 15 months. The wife did not know where the husband was, and did not learn of the purchase of the land until after it had been sold to a third party. Held, that the acts of the husband showed an intention to impress the land with the character of a homestead, and that the wife had a homestead right therein.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 39; Dec. Dig. § 31.*]

2. HOMESTEAD (§ 117*)—TRANSFER BY HUSBAND—EFFECT.

The conveyance of land by a husband without the concurrence of the wife is absolutely void, and passes no title.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 191–202; Dec. Dig. § 117.*]

Appeal from District Court, Nolan County; Jas. L. Shepherd, Judge.

Action by Mrs. Mary Sanders against T. E. Crutcher. From a judgment for plaintiff, defendant appeals. Affirmed.

Woodruff & Woodruff and J. B. McMahon, for appellant. Ed. Spiers and H. C. Hughes, for appellee.

HIGGINS, J. [1] W. C. Sanders and the appellee, Mary Sanders, were husband and wife, living in the state of Oklahoma. They owned property there which they sold, intending to go to New Mexico and acquire public land there as a home. They had a family of ten children; but the five older ones were grown, and did not live with them. After having sold out their property in Oklahoma, W. C. Sanders one day told his wife that the wife of one of their sons was very sick, and she left on the train to go to her son's place, a distance of about six miles, and on the next day she returned to her home. While she was away, and on the night of the day that she went to visit her son's sick wife, the husband, W. C. Sanders, took the five younger children and abandoned her, going first to Shreveport, La.; thence to Houston, Tex.; and thence to Nolan county. In Nolan county he purchased a quarter of a section of land, the same being the premises in controversy in this suit, and lived thereon with his children for about 15 months, when he sold and conveyed the same, for a valuable consideration, to appellant. After selling the same, he left Nolan county with his children, and shortly thereafter he wired his wife that he was going to send the children to her, which he thereupon did. The wife did not know where her husband or her children were up until the time the children were returned to her, and she was abandoned by her husband, as above stated, without her consent and without fault upon her part. She and her older children endeavored to ascertain the whereabouts of her husband and the children he had taken with him, but were unable to do so. Her husband did not communicate with her, and did not permit the children with him to do so. It was her intention at all times, as soon as she could ascertain the whereabouts of her husband and children, to go to them and live with

them, and at the time they sold out their property in Oklahoma it was her intention to go with him to New Mexico and acquire a home there; and it was at all times her intention to make her home with her husband and children wherever they might be. She knew nothing about the ownership by her husband of the land in controversy until after Sanders had sold and conveyed the same to Crutcher.

At the time Crutcher purchased from W. C. Sanders, he was informed by him that he had a wife, but that she had abandoned him six years prior to that date, and had lived separate and apart from him, and had refused to live with him as his wife, and that she had no homestead rights in the land; and he further informed Crutcher that his said wife had never lived in Texas, but was then residing in Oklahoma, and that the land was his separate property.

This suit was instituted by appellee against Crutcher for recovery of the above-mentioned quarter section of land, upon the theory that she had a homestead right therein when the same was conveyed by her husband to Crutcher, and, a conveyance by the husband being in fraud of such right, the same was therefore void and passed no title. Upon trial before a jury, the court gave a peremptory instruction in favor of the appellee, and the court's action in this matter is here sought to be revised.

We have been unable to find any authority directly bearing upon the question here involved; but, under the facts detailed above, we think the court correctly instructed a verdict for the appellee. It is true the wife never, in fact, lived upon the land, and it is true that she had no knowledge of the ownership of this particular tract of land until subsequent to its conveyance to Crutcher; but when W. C. Sanders acquired this tract of land and moved thereon with his five children and made his home thereon for a period of 12 or 15 months, and until he conveyed to appellant, it thereby became the homestead of his family. The appellee was his wife, and the fact that she had been wrongfully abandoned did not affect her right to live in this home with her husband and children; and the only reason she was not doing so was because of the wrongful acts of her husband, over which she had no control. It is true the question of intent is usually a controlling factor in determining whether or not property is impressed with the homestead character, and, while there is no direct evidence showing that it was the intent of W. C. Sanders to make this property his home, yet it is clearly evidenced by the fact that he moved thereon and lived on the same as his home with his family, and there is nothing whatever in the record to indicate that it was not his homestead, and his residence thereon with his children clearly impresses it with that character. It was the acts of W. C. Sanders which made it a homestead; and, while the wife never, in fact, lived upon the land, yet as his lawful wife she had a right to live upon the land with him and her children, and had a homestead right therein, although she may, in fact, never have been on it.

The case of Linares v. De Linares, 93 Tex. 84, 53 S. W. 579, has some bearing upon the question here under consideration. In that case, the wife and her deceased husband were married in the republic of Mexico about 30 years previously, and separated in the year 1878, the wife going from New Laredo, Mexico, where she and her husband were then living, to Monterey, and there remained until the death of her husband, which occurred in 1898. The husband came to Laredo after the separation, and in 1897 acquired a lot there, upon which he built a house and lived therein alone for about one year previous to his death. The separation between the husband and wife was an agreed one; the wife being induced thereto by reason of the cruel treatment of the husband. There were no children. The wife filed an application to have the house and lot in Laredo set aside to her as a homestead. In passing upon her right to have the same so set aside, the court says: "The property in controversy in this case was the homestead of the decedent; but the question arises, Was it the homestead of the family? The family in this case consisted of Pioquinto Linares and his wife. It was his residence; but it was not hers. She never lived upon it. Neither did he nor she at any time contemplate that it ever should be. The fact that they had agreed upon and had effected a permanent separation precludes the idea that it was ever intended by either that she should reside there. It was clearly not in fact the homestead of a family; nor do we think it can be deemed so in construction of law." The court held that the wife was not entitled to have the lot set apart to her, because it was not "the homestead of the family," and the court seems to base its opinion upon the fact that she never lived upon it, and that neither she nor her husband ever contemplated that she should reside upon it; but, upon the contrary, the fact that a permanent separation had been effected precluded any idea that it was ever intended by either that she should reside thereon.

[2] Now, in the instant case, the property in controversy was the homestead of the family of W. C. Sanders. The appellee, Mary Sanders, was lawfully and rightfully a member of that family, and it was at all times her intention to remain a part of that family and claim her homestead rights in any home which might be acquired by the family; and, when properly interpreted, we believe the case of Linares v. De Linares supports our views in this case. See, also, Henderson v. Ford, 46 Tex. 627; Clements v. Lacy, 51 Tex. 150. If it was a homestead.

the conveyance by the husband without the concurrence of the wife was absolutely void, and no title whatever passed by the deed. Stallings v. Hullum, 89 Tex. 431, 35 S. W. 2; Texas Land & Mortgage Co. v. Cooper, 67 S. W. 173.

Affirmed.