## L. E. WHITHAM & CO. v. SCHULZ.*
### (No. 12057.)

Court of Civil Appeals of Texas. Fort Worth. Dec. 22, 1928.

Rehearing Denied Feb. 9, 1929.

Millburn E. Nutt, E. R. Surles, and Carrigan, Britain, Morgan & King, all of Wichita Falls, for appellant.

Kilgore, Rogers & Montgomery, of Wichita Falls, for appellees.

CONNER, C. J. This suit was instituted by the appellee, Clara Schulz, November 9, 1927, against L. E. Whitham and R. M. Whitham, doing business as L. E. Whitham & Co., and others not parties to the appeal, suing in the usual form of trespass to try title to recover lot No. 18, in block 13, of the I. Jalonick addition to the city of Wichita Falls. In a second count, the plaintiff alleged that on April 14, 1925, she was the owner of said lot and sold and conveyed the same to J. T. Vick by a general warranty deed and that, as part of the consideration therefore, J. T. Vick executed his promissory note for the sum of $3,200, payable in monthly installments of $50 each, to secure which the vendor's lien was retained in the deed; that Vick made default in the payment of certain installments and the note had thereupon been declared to be due in accordance with the terms of the note. It was further alleged that L. E. Whitham & Co., and certain other defendants not parties to the appeal were claiming some character of interest in said land, but which claims were inferior to the rights of appellee; that the claims by the other defendants, including L. E. Whitham & Co., were of no effect, because at the time the property was purchased and at all times thereafter until the filing of the suit the lot constituted the homestead of the said J. T. Vick, and none of the defendants had complied with the statutory provisions for creating a valid lien on the property. The plaintiff specifically alleged that the claim of L.

E. Whitham & Co. was evidenced by an instrument dated April 16, 1926, and recorded in volume 20, at page 619, of the Mechanic's Lien Records of Wichita County, Texas, which instrument, it was alleged, created no lien against the property above described, or, at best, was second and inferior to that of plaintiff and cast a cloud upon the title to the property, which should be removed by a decree of the court.

Plaintiff's prayer was that she have judgment against the defendant Vick for her debt, interest, attorney's fees, and costs of suit, together with a foreclosure of her vendor's lien; that the said lien be declared to be superior to all others; and that the several claims of the defendants be canceled and the cloud cast upon her title to the property in question be removed, etc.

The defendants L. E. Whitham & Co., among other things, pleaded a general denial and specially pleaded the street improvement lien mentioned by plaintiff and hereinafter more particularly described.

A trial resulted in a judgment in favor of the plaintiff in accordance with the prayer of her petition, and the defendants L. E. Whitham and R. M. Whitham, constituting the partnership of L. E. Whitham & Co., have duly prosecuted this appeal.

The case has been submitted to this court upon an agreed statement of facts, as provided for by article 2244, Rev. Statutes of 1925. In substance, so far as necessary to detail, it therein appears that the appellee, Clara Schulz, on the 14th day of April, 1925, owned the lot in question, and on that day conveyed the same by warranty deed to the defendant J. T. Vick, therein reserving a vendor's lien to secure the payment of Vick's note of even date for the principal sum of $3,200, payable to the order of Mrs. Clara Schulz, in monthly installments of $50 each, and providing that upon the failure to pay any installment of principal or interest when due, at the election of the owner, the entire note might be declared due. Defendant made default in the payment of installments, whereupon Mrs. Schulz demanded the entire amount and, upon the failure to pay, placed the note in the hands of attorneys for collection, and agreed to pay them 10 per cent. upon the principal and interest then due.

It is further agreed that J. T. Vick, one of the defendants, was the owner and holder of the premises described in plaintiff's petition at all times set forth in the pleadings filed by the defendants L. E. Whitham & Co., holding the same by virtue of the warranty deed executed and delivered to him by the plaintiff, Clara Schulz, and that on the 5th day of July, 1926, pursuant to an ordinance of the board of aldermen of the city of Wichita Falls, Tex., R. E. Shepherd, mayor of the city, issued and delivered to L. E. Whitham & Co. an improvement certificate reciting that a special assessment of $379.07 had been levied upon the property in question; that said assessment was made payable to L. E. Whitham & Co., in certain installments; that said assessments had been levied by virtue of ordinances and proceedings of the board of aldermen providing for the payment by the said owner of his pro rata of the cost of paving the highway in front of said premises, under a contract for such improvements, entered into between the said city and contractor, of date the 1st day of February, 1926; that by said ordinance, contract, and proceedings said assessment, together with cost of collection and reasonable attorney's fees, if incurred, was declared to be a first and paramount lien upon the premises (except as to lawful ad valorem taxes), and a personal liability of said owner.

The certificate also recited: "That all the proceedings with reference to making said improvement have been regularly had in compliance with the charter and ordinances of said city and chapter 11, tit. 22, Revised Statutes of Texas 1911, and that all prerequisites to the fixing of the lien and claim of personal liability, evidenced by this certificate, have been performed. That said payment and improvement has been completed by said contractor in compliance with the terms of said contract and other proceedings, and was accepted by said City on the 5th day of July, 1926," etc.

No complaint on this appeal is made of a want of regularity in the proceedings of the city leading up to the issuance of the improvement certificate above noted, and hence the claim and lien asserted by L. E. Whitham & Co. must be treated as in all things valid, unless invalidated by the facts hereinafter stated. In this connection, however, we should state that Dr. Vick, on the 16th day of April, 1926, executed in a form unquestioned, a mechanics' lien in favor of L. E. Whitham & Co. upon the lot in controversy, which recites that Dr. Vick was a "single man, owner of Lot No. 18, Block No. 13, fronting on north side of 16th street in the City of Wichita Falls * * * that in consideration of the improvements including grading, excavation, paving and constructing curb upon said street, under the terms of a resolution and ordinance adopted by the Board of Aldermen of said City, and in accordance with the specifications therefor prepared by the city engineer, do promise to pay L. E. Whitham and company, a co-partnership composed of L. E. Whitham and R. M. Whitham, or its assigns, the sum of Three Hundred seventy-nine and 07/100 dollars. * * * In consideration of said improvements Dr. J. T. Vick a single man, does hereby mortgage said premises to L. E. Whitham and company and grant it a Mechanic's Lien thereon to secure the payment of said indebtedness. * * * Any error or invalidity in any proceedings of the city with reference to making said improvements, or assess-

ing the cost thereof, is hereby waived. * * * The recitals of any fact in the certificate issued by the said city evidencing the assessment of said premises for said improvements, shall be prima facie of such facts, and this obligation shall be cumulative of such certificate, any payment of which shall operate as a credit hereon."

Dr. Vick testified that he purchased the lot from Mrs. Schulz, as evidenced by the deed hereinbefore referred to, and, further, that: "I was married at that time. I did not move into that house at that time. I moved into that house, in, I guess it might have been thirty days, possibly more. I did not own any other property in Wichita Falls at that time. I have not owned any other property in Wichita Falls since that time. From about thirty days after I bought the house, and moved in, I have lived in the house; I still live in it; I have one room there, my family is not there. I have had my room there since 30 days after I bought it. I was so using it ever since I moved in, and was so using it in April, on the 16th of April, 1926. I have been all the time since then."

On cross-examination he testified: "I am the same J. T. Vick, who is named one of the defendants in this case. I am a defendant as well as L. E. Whitham and Company. I am a married man, I am not living with my wife at this time. It has been five years since I lived with my wife; yes, it is a fact that I became separated from my wife about five years ago; as to whether the separation was permanent, well I suppose so, we have not gone back together. We have not had any relations as husband and wife, I take care of her is all, but I have been separated from her. I have not lived with her since that time. She has never lived with me in the property. She came to the house one time when I was in bed sick, that was either in 1926 or 1925. She stayed there about 10 minutes, came to the house—just came to the sick room a few minutes. I do not occupy the place now, other than one room. I have a lady stay there to do my cooking; as to whether I have the use of the entire house or just one room in the house—well just one room and in the dining room of course, I come to my meals. I have exclusive control over only one room in the house. I signed a mechanic's lien contract in favor of L. E. Whitham and Company for pavement improvements. At the time I signed that my wife and I had permanently separated. I did not claim that as a homestead at that time. I have never claimed it as a homestead since that time, nor has any part of my family resided there. I am the only member of my family that has resided there in that house at any time and I occupied it only as a single man; I have not formally gone ahead and got a divorce myself, but I have no legal connection; I am not connected with my wife, except I am still legally married, and supporting her. My wife lives in separate property. She lives in Healton, Oklahoma, and she has never resided in any part of those premises."

On redirect examination, he further testified: "During those years I have provided for my wife; I have taken care of her. I do not have any unmarried children. I have only two and they are both married. The housekeeper I have, I simply employ her to take care of the house for me in consideration of her services in cooking my meals, and taking care of the house; she is working for me."

■■ It seems to be now well settled that a statutory or authorized charter improvement lien of a city, which in express terms is made superior to prior existing liens, is generally valid and enforceable. See Marriott v. Corder (Tex. Civ. App.) 4 S.W.(2d) 213, writ refused, and Nalle v. Eaves (Tex. Com. App.) 5 S.W.(2d) 500. This rule, of course, cannot be made to apply to lands and lots which constitute the homestead of a family unless such lien has been created and fixed in the manner provided in the Constitution and statutes, which both require that work and material used in construction improvements thereon must be contracted for in writing with the consent of the wife in the same manner as making a sale and conveyance of the homestead. Rev. Civ. Statutes, art. 5460; Constitution, art. 16, § 50. Hence the vital issue in this case is whether or not lot No. 18 in block No. 13 of the I. Jalonick addition to the city of Wichita Falls, constituted the homestead of J. T. Vick and family at the time of his written contract for and the construction of the street improvement; it being undisputed that his wife did not join in the execution of the contract, or consent to the improvement.

Appellee has cited a number of cases in support of the court's finding and judgment. The cases relating to the subject are not all apparently harmonious or easily distinguishable, but we will briefly notice those most strongly urged in support of the decree below. Generally speaking, they are cases in which it has been held that the homestead character depends more particularly upon the actual use and occupancy of the premises, and that, where the homestead character of the premises becomes thus fixed, declarations of the occupant may be disregarded (see First National Bank v. Rice-Stix Dry Goods Co. [Tex. Civ. App.] 213 S. W. 344; Ward v. Baker [Tex. Civ. App.] 135 S. W. 620); that a homestead once fixed does not lose its character as such by the mere absence of the wife or of both husband and wife, where the intention exists to return (see Moores v. Wills, 69 Tex. 109, 5 S. W. 675); that the homestead character may exist, even where the wife or

husband has been divorced, in cases where there yet remains children as members of the family (Hall v. Fields, 81 Tex. 553, 17 S. W. 82). See, also, Speer & Goodnight v. Sykes, 102 Tex. 451, 119 S. W. 86, 132 Am. St. Rep. 896; Zapp v. Strohmeyer, 75 Tex. 638, 13 S. W. 9.

But it has also been held that the husband, as the head of the family, has the right to choose the homestead and the further right to abandon it, if done in good faith and not to defraud the wife (see White v. Cowles [Tex. Civ. App.] 155 S. W. 982); that the abandonment of a homestead after it is once established is always a question of intention (Gates v. Steele, 48 Ark. 539, 4 S. W. 53); and that, after divorce, the homestead loses its character as such, where there are no remaining dependents (see Bahn v. Starcke, 89 Tex. 203, 34 S. W. 103, 59 Am. St. Rep. 40).

■ In the case before us, the burden of proof was undoubtedly upon appellee to prove by a preponderance of the evidence that the lot in controversy constitutes the homestead of Vick and wife, within the meaning of our Constitution, laws, and decisions relating to the subject. She so distinctly alleged and it was an essential element of her cause of action. To fail to so prove must inevitably result in a judgment against her, in so far as she sought to establish the superiority of her lien over the lien of appellant. See Marriott v. Corder and Nalle v. Eaves, hereinbefore cited.

■ The evidence is undisputed that the children of Dr. Vick and wife are all married and no longer constituent members of the family. Dr. Vick testified that he and his wife had been permanently separated for a period of five years; that he had never claimed the premises in controversy as his homestead, and deliberately executed a written contract, on the faith of which valuable improvements were made upon his property, and in which he declared that the premises were not his homestead. No evidence was offered by the appellee that the wife ever claimed the property as a homestead, notwithstanding the fact that the wife's residence in Oklahoma was given upon the trial and must have beeen well known to appellee. If she could have proven by the testimony of the wife that she was without a homestead in Oklahoma, and contemplated the possibility of a return to her husband in Wichita Falls, to claim or occupy the premises in controversy as a homestead, the burden was upon the appellee to do so. Her failure to make the effort, it seems to us, authorizes a presumption that she could make no proof by the wife. Such presumption, under the circumstances, is well supported by the authorities, and we are the more inclined to indulge such presumption by the fact appearing in the record before us that to appellant's motion for a rehearing on the ground, among

others, of newly discovered evidence, the affidavit of Mrs. Vick is attached, in which she declares, in substance, that she was conducting a rooming house in Alabama upon property owned by her, and never claimed the property in question as a homestead and had no intention of doing so. The only time the evidence showed that Mrs. Vick manifested any interest in Dr. Vick was a visit of a few moments' duration during his sickness, there being no accompanying statement on her part of any interest in the property. The evidence is to the further effect that Dr. Vick has been providing for his family in Oklahoma, upon property occupied by her, which at least suggests that Dr. Vick has provided for his wife a home with which there is no evidence of dissatisfaction shown.

■ If, in fact, the separation of Dr. Vick and wife was permanent, as he testified, we are unable to see that in principle the family status was not as effectually terminated as if the marriage relation had been dissolved by a formal decree of divorce, and we think the case before us is to be ruled by what was said by Judge Gaines in the case of Linares v. De Linares, 93 Tex. 84, 53 S. W. 579. In that case, the wife had never resided on the property sought to be claimed as a homestead. The husband had purchased it and resided thereon alone for many years. After his death, the wife sought to have the property set aside to her as a homestead. Chief Justice Gaines in denying her that right, among other things, said: "The constitution protects from sale under execution 'the homestead of a family.' Const. art. 16, § 50. The statute, in providing for exemptions from forced sale, specifies first: 'The homestead of the family.' The property in controversy in this case was the homestead of the decedent, but the question arises, *was it the homestead of the family?* The family in this case consisted of Pioquinto Linares and his wife. It was his residence, *but it was not hers. She never lived upon it.* Neither did he *or she at any time contemplate that it ever should be. The fact that they had agreed upon and had effected a permanent separation precludes the idea that it was ever intended by either that she should reside there.* It was clearly not *in fact* the homestead of a family, *nor do we think it can be deemed so in construction of law.* The case differs materially from that of Henderson v. Ford, 46 Tex. 627, and also from that of Clements v. Lacy, 51 Tex. 150. In each of these cases, it is true, the wife never lived upon the land in question; but in *each it clearly appears that it was intended both by the husband and the wife that she should do so as soon as circumstances should permit.* In the former, a confederate soldier, who owned land in Texas, and lived upon it as his homestead, married in Alabama; he and his wife contemplating at the time of their marriage that it should

be their home. It was held that it became their homestead, and that a subsequent conveyance by the husband, not joined in by the wife, did not pass the title. In the latter case the court say, 'that the mere absence of the wife from the state, when not designed as an abandonment of the husband, but with his consent, and with the intention to make his domicile here her future home, will not work a forfeiture of her homestead rights.' *The intention to make the property the home of the wife as well as that of the husband, which existed in both of the cases cited, was absent in the present case.*" (Italics ours.)

It is to be remembered that the general right of the husband to designate the homestead and to buy, sell, and improve property purchased by him is a right not to be ignored, and we conclude, on the whole, that the court below should have rendered a judgment establishing the validity and superiority of appellant's lien, with all necessary orders for its enforcement, and the judgment will here be so far reversed and rendered in appellant's favor as to so show. The judgment in other respects is left undisturbed.