## COOPER v. HINMAN et ux. (No. 249–3451.)

(Commission of Appeals of Texas, Section B. Dec. 14, 1921.)

**I. Deeds ⬅️179—Grantee returning deed estopped to claim title.**

A grantee in an unrecorded deed, who returns the instrument to the grantor with a mutual understanding that the title is thereby to revest in the grantor, is estopped to assert title under the deed.

**2. Homestead ⬅️122—Where no fraud, wife cannot object when husband returned unrecorded deed to grantor.**

Where land was conveyed to husband, who paid a small amount thereon, wife could not set up homestead rights where the husband returned the deed unrecorded to the grantor without acting in fraud of the rights of the wife, who raised no objection until after the land had enhanced very materially in speculative value by reason of the discovery of oil in the vicinity.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Ellis Cooper against H. R. Hinman and wife. From a judgment of the Court of Civil Appeals (212 S. W. 972), affirming a judgment for defendants, plaintiff brings error. Reversed and rendered.

Scott & Brelsford and R. B. Truly, both of Eastland, and A. J. Power, of Fort Worth, for plaintiff in error.

J. R. Stubblefield, of Eastland, for defendants in error.

McCLENDON, P. J. The facts which control this case are undisputed and, briefly stated, are:

In the fall of 1915 Dan Wagoner conveyed to H. R. Hinman by general warranty deed 50 acres of land in Eastland county for the recited consideration of $1,500, $250 recited as cash, and the balance represented by one note for $150 due November 1, 1916, and one note for $1,100 due November 1, 1917; the two notes being secured by reserved vendor's lien. The recited $250 cash was in fact not paid, the two notes constituting the entire consideration for the land. Hinman and wife at once went into possession and so remained until this suit was filed, about two years later. Hinman paid the $150 note, as well as the interest due November 1, 1916, on the $1,100 note. The latter part of August, 1917, an agreement was entered into between Hinman and Wagoner by which the land was to be turned back to Wagoner in consideration of the cancellation of the $1,100 note and the payment by Wagoner to Hinman of $100 in money. No reconveyance was made, but in consummation of this agreement Wagoner paid Hinman the $100, and Hinman redelivered to Wagoner the deed, which had not been recorded, with the understanding that the title should thereby revest in Wagoner, and presumably the $1,100 note was canceled or surrendered to Hinman. The deed was then destroyed by Mrs. Wagoner. Later, on October 6, 1917, Wagoner for a consideration of $1,300, $700 of which was cash, conveyed the land by general warranty deed to plaintiff in error, Ellis Cooper.

This suit was brought by Cooper against Hinman and wife to recover the land. The trial in the district court resulted in a judgment upon a directed verdict in favor of Hinman and wife. This judgment was affirmed by the Court of Civil Appeals. 212 S. W. 972.

Some contention was made in the trial court and Court of Civil Appeals that the deed from Wagoner to Hinman was not intended to be an absolute conveyance, but was conditional. The decision of the Court of Civil Appeals on this issue we think is correct. But aside from this the evidence, in our judgment, does not raise that issue.

The controlling questions in the case are whether the redelivery of the deed by Hinman to Wagoner under the circumstances above outlined was sufficient to revest title, legal or equitable, in Wagoner; and, if so, whether such revestment of title operated to defeat Mrs. Hinman's homestead rights in the property.

There is respectable authority for the proposition that the cancellation, destruction, or return to the grantor of an unrecorded deed, under mutual understanding of the parties thereto that the title is thereby to revest in the grantor, will "operate to restore the estate to the grantor, if the rights of third persons have not intervened." 18 C. J. 407, 408, and authorities cited in notes 77 and 86.

The weight of authority, however, is to the effect that where title has once vested by the execution and delivery of a deed, its mere destruction or redelivery to the grantor is not sufficient to divest the grantee of the legal title, even though the parties intended that the grantor should reacquire the title. 18 C. J. 407, 408; 8 R. C. L. 1021, 1022.

"But in order to effectuate the intention of the parties, equity has materially narrowed the legal rule, and holds that the grantee may revest an equitable title in the grantor by returning to him the deed, or by destroying it, or consenting to its destruction; and similarly an equitable title is conferred upon a third person, where, by mutual consent of the grantee and grantor, the deed is destroyed, and the grantor conveys to such third person." 8 R. C. L. p. 1023.

In the circumstances last cited, it has been held that equity will hold the original grantee as a mere trustee and compel him to convey the land to the purchaser from his vendor. Russell v. Meyer, 7 N. D. 335, 75 N. W. 262, 47 L. R. A. 637; Crossman v. Keister, 223 Ill. 69, 79 N. W. 58, 8 L. R. A. (N. S.) 698, 114 Am. St. Rep. 305. See, also, 18 C. J. 408, where it is said:

"And generally an equitable interest may, however, be created in the grantor by redelivery, which will operate as a defense to a suit by the grantee to establish title, or enable the grantor to compel a reconveyance."

In some courts it is held that the grantee is estopped to assert title under a deed thus redelivered to his grantor. In this connection we quote from Bank v. Eastman, 44 N. H. 431:

"It is well settled that the redelivery of an unrecorded deed for cancellation, to the grantor by the grantee, does not operate as a reconveyance, but it will under some circumstances, estop the grantee from making proof of the deed so delivered up. * * * Where an unrecorded deed has been canceled or redelivered to the grantor by the grantee, with the intention of revesting the title, the grantee cannot 'produce the deed,' and the law will estop him in both cases to give secondary evidence to defeat the intended operation of his act in returning or annulling the deed."

In the Third Edition of Devlin on Real Estate and Deeds the subject under consideration is treated in the following language:

"But if the deed has been delivered back to the grantor with the intent to revest the title in him, while the legal title cannot in this manner be transferred, equity will grant relief and prevent the grantee from asserting any right in the property. If the unrecorded deed is surrendered by the grantee with the intention that it be destroyed for the purpose

of placing the title back in the grantor, the latter secures the equitable but not the legal title. The circumstances that the grantor is in possession of the land may be taken into consideration. In some cases the courts have said that for the purpose of preventing fraud they would make the grantee redelivering the deed a constructive trustee. In a case in which it appears that both grantor and grantee believed that if the deed was delivered back to the grantor it would revest the title in him, it was said by Mr. Justice Farmer: 'The fact that this is not the law does not change the equitable rights and duties of the parties. The delivery back by the grantee to the grantor of an unrecorded deed could not affect the legal title to the land, but such a delivery with intention that the deed shall be destroyed for the purpose of revesting title in the grantor passes an equitable title. The grantee by his surrender of the deed is estopped from claiming title in himself.' " Section 306A.

[1] The principles announced in the above quotations are recognized in the case of Stanley v. Epperson, 45 Tex. 644. In that case, after a deed had been delivered to the grantee, but not recorded, the latter sold the land to a third party and by agreement between one of the grantors, the grantee, and the purchaser, the name of the grantee was erased and that of the purchaser inserted in the original deed. It was held that the alteration of the deed after delivery, whether recorded or not, could not have the effect to revest the title in the grantor or abrogate or annul the title of the grantee; but that—

"While it is true the altered deed of itself cannot be held to be either the deed of Stanley and wife (the grantors) to Epperson (the purchaser from the grantee) or a deed from Henderson (the grantee) to him, yet the facts show that it would operate as a fraud upon appellee (Epperson) to permit Henderson, in whom the title was vested, to deny that it has been thereby conveyed to appellee. He is therefore estopped from doing so."

[2] The question presented by the fact that the property was the homestead of Hinman and wife and the failure of the latter to join in a reconveyance to Wagoner is foreclosed by a long line of authority in this state. The husband's control over the homestead property, burdened with liens or equities which are superior to the homestead right, is concisely stated in the following quotation from an opinion by Associate Justice Bonner:

"There is much force of reason and sound equity in the opinion of Chief Justice Hemphill, in White v. Shepperd, 16 Tex. 172, in regard to the restraint of the husband to dispose of the homestead without the wife's consent, in which it is said: 'This restriction applies where the husband has acquired full property in the land, and not where it is charged with preceding equities or incumbrances. These must be discharged, and they have precedence over the rights of the homestead privilege; and the right of the husband to make arrangements in relation to these incumbrances, or to renounce lands thus burdened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right which might arise, if the incumbrances or conditions were ever discharged or removed, unless in cases where the husband is squandering the property, with the fraudulent design of depriving the wife of a homestead.' " Clements v. Lacy, 51 Tex. 160.

An extended list of cases in which the doctrine is held that—

"The restriction on the power of the husband to dispose of the homestead without the wife's consent does not apply where the land is charged with preceding equities."

—is given in 9 Ency. Dig. of Texas Reports, p. 191 et seq.

In the instant case the record presents no intimation that the husband acted in any way in fraud of the rights of the wife. Only a very small amount had been paid upon the land, and Hinman and wife had had the use of it for nearly two years. In the trade by which the deed was redelivered to Wagoner, Hinman received $100 from Wagoner in addition to the cancellation of the $1,100 note and earned interest thereon for nearly a year. If earned interest on the $1,100 note be taken into consideration, Hinman received back from Wagoner more than he paid for the land. There is no suggestion in the record that this amount was less than the fair value of the land at the time. No protest or objection to the transaction was made by Mrs. Hinman until after the land had enhanced very materially in speculative value by reason of the discovery of oil in the vicinity. The transaction, which must be viewed as of the date of its occurrence, does not even suggest unfairness. If the debt had been due and Wagoner had brought suit to rescind the sale for nonpayment of the vendor's lien note or to foreclose the lien, Mrs. Hinman would not have been a necessary party to the suit, but her rights would have been disposed of in a judgment against her husband. Cooley v. Miller, 228 S. W. 1085, and cases there cited.

It is our conclusion that the judgments of the district court and Court of Civil Appeals should be reversed and judgment rendered in favor of plaintiff in error for the land sued for.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.