**SOUTHERN HOME BLDG. CO. et al. v. WIMBISH et ux.**

No. 12281.

Court of Civil Appeals of Texas. Dallas.

Nov. 20, 1937.

Rehearing Denied Dec. 24, 1937.

Renfro & Kilgore, of Dallas, for appellants.

Lyle Saxon and J. E. Burkholder, both of Dallas, for appellees.

YOUNG, Justice.

This appeal follows a suit for cancellation and rescission as to the sale of certain real estate in the city of Dallas, Tex.; being filed by G. R. Wimbish and wife, Luna Wimbish, purchasers and plaintiffs below, against Southern Home Building Company and Southern Trust & Mortgage Company, corporations, and Aubrey M. Costa, defendants below, and for the recovery of all sums paid thereon. The contract of sale, dated February 18, 1932, being the inception of this rather involved litigation, is here quoted in material part:

"By this Agreement and Contract, Southern Home Building Company, hereinafter called Seller, acting through the undersigned and duly authorized Agent, hereby sells and agrees to convey (or cause to be conveyed) unto G. R. Wimbish and wife, Luna Wimbish, hereinafter called Purchaser, the following described property; Lying and situated in the City and County of Dallas, State of Texas, being Numbers 3321 Oak Grove and 3320 Noble, according to official map of City of Dallas, Texas, said property being part of Lot 2 in Block 971, Cole's Oak Grove Addition to the City of Dallas, Texas.

"The purchase price is $5500.00, payable as follows: $250.00 Cash (of which Purchaser has deposited with undersigned Agent $250.00 as part payment, receipt of which is hereby acknowledged by said Agent; The assumption of an unpaid balance of approximately $2705.00 of first lien notes now outstanding on said property, which notes are payable $33.60 per month, including interest and principal and the execution of second lien note for approximately $2545.00 payable $31.40 per month, which payments are to include interest at 8%, payable monthly on unpaid balance and the remainder to principal of 2nd lien note. Payments to begin March 1, 1932, and continue monthly thereafter on the 1st of each month. Purchaser is to pay Seller or their assigns $65.00 per month, of which Seller is to pay the holder of the first lien, or his order, $33.60 per month, and the remaining $31.40 per month is to be credited as stated above on the 2nd lien note. The said executed note to be secured by Vendor's lien and Deed of Trust with power of sale and with the usual covenants as to taxes, insurance and default."

For convenience appellants will be termed defendants here, the appellant corporations being further designated as the Building Company and the Mortgage Company, respectively; the appellees herein as plaintiffs.

Suit was filed by plaintiffs March 1, 1935, alleging generally the above contract of sale and the verbal agreement of F. M. Love, representing both defendant corporations, to the effect that the $2,705 first lien note, assumed therein, would bear 8 per cent. interest, and the $5 monthly payments on the $250 chattel mortgage note, above mentioned, was to be taken from the $31.40 payment on said second lien note. Plaintiffs further alleged that, in January, 1934, they learned for the first time that they were paying a much higher rate of interest on the first lien note than they had agreed to pay, and that no credit had been applied on the $250 note, as was agreed; that in the beginning, material fraudulent representations touching said matters had been made by Mr. Love for defendant corporations, on which plaintiffs relied in consummating such real estate purchase, and in continuing payments thereon. That they had paid the aggregate sum of $1,849.77 on all notes in suit, by reason of which alleged deceit and misrepresentations they were entitled to rescind said transaction, and for the return of all moneys paid and cancellation of the $2,545 second lien note in question. In conclusion, among other things, they alleged that "plaintiffs hereby tender the title to the property in suit in consideration of said cancellation."

Aubrey M. Costa, defendant and trustee in the deed of trust, securing the second lien note, advertised this property for sale on March 5, 1935, under notices of foreclosure, and plaintiffs further prayed for and were granted a temporary injunction, restraining such sale. The said $250 note represented the cash consideration of the above sales contract, and was created by a cash loan from defendant Costa to plaintiffs, secured by a chattel mortgage on household furniture, executed at date of sale above, and was payable $5 per month with 8 per cent. interest included, to said Costa individually.

Defendants' pleadings in answer to the above suit were for dissolution of the restraining order theretofore granted, on many grounds, and answering to the merits,

pleaded generally the above contract, wherein plaintiffs were to pay $33.60 per month, including 8 per cent. interest on the unpaid balance on the first lien note of $2,705; a monthly installment of $31.40, including 8 per cent. interest on the unpaid balance of the $2,545 second lien note; the first lien note being owned by the General American Life Insurance Company, and the $250 chattel mortgage note being still owned by Aubrey Costa. That the installments paid by plaintiffs since the sale were sufficient only to pay the interest and a small portion of principal on the aforesaid $250 note, and plaintiffs had defaulted in payments on said first lien note, to the extent that defendants had been forced to advance $199.60 to the first lien holder to protect the second lien note owned by defendant Mortgage Company; that the balance due on such first lien note was $2,143. Further, that plaintiffs had complained to the Mortgage Company, about December 1, 1934, of paying interest on said first lien note in excess of 8 per cent.; whereupon, said Mortgage Company agreed with plaintiffs to rewrite the entire loan, so that plaintiffs would be required to pay no more than the 8 per cent. interest contracted for. Defendants alleged further that, pursuant to said rewriting agreement, the Mortgage Company paid off the first lien note to the General American Life Insurance Company, and a $405 commission note made in connection therewith, and received assignments thereof. That said Mortgage Company had prepared a new note embodying the amount due upon said first lien note, allowing an adjustment so that plaintiffs would not be required to pay any interest in excess of 8 per cent. from date of their assumption, the balance due on said first and second lien notes so adjusted being $4,518.48. Defendants further alleged that plaintiffs had refused to sign said new note, but, on the other hand, had filed this suit for cancellation and rescission; and, further, that plaintiffs were collecting the rents and revenues from the property in suit, and had refused to account therefor, or to pay their said obligation; in consequence, notices were posted for foreclosure.

Upon hearing, the temporary injunction theretofore granted the plaintiffs was modified so as to permit a later foreclosure, from which action of the trial court said plaintiffs appealed. This appeal was dismissed by this court, the issues therein becoming moot by reason of the defendant Mortgage Company filing a cross-action in the same cause below, for foreclosure of its entire debt above mentioned, and for receivership. See Tex.Civ.App., 86 S.W. 2d 796. Upon a later preliminary hearing, a receiver was appointed at the instance of defendant Mortgage Company, to take charge of the property until final trial, which action plaintiffs again appealed to this court, such appeal being dismissed because of failure of the plaintiffs below to amend their appeal bond. The main case was tried to a jury in February, 1936, upon issues joined generally, as above mentioned, with Costa, individually, coming in under trial amendment, declaring on the $250 chattel mortgage note, and praying for judgment thereon against plaintiffs.

Upon conclusion of the testimony the Mortgage Company filed request for peremptory instruction against plaintiffs for the full amount of the balance due on the first and second lien notes, with 8 per cent. interest, according to the terms of said obligations, and for foreclosure. The Building Company moved for peremptory instruction generally, and Costa asked a further peremptory instruction as to the balance due on the $250 chattel mortgage note, interest, and attorney's fees. The fact questions submitted to the jury in the charge of the court, and the answers thereto, were in substance that: (1) The defendant Building Company, acting by and through F. M. Love, its president, represented to plaintiffs that the interest rate on the first lien note bore 8 per cent. interest; (2) that said plaintiffs relied upon said representations; (3) that such representations were false; and that (4) F. M. Love at the time he made same to the plaintiffs knew that they were false. A further issue found the reasonable rental value of the premises in suit, from February 18, 1932, to date of trial, was $50 per month.

Following the above trial and jury verdict, all defendants filed motions for judgment notwithstanding the jury findings, the motions of the Building Company and the Mortgage Company being to the effect that G. R. Wimbish had entered into a novation with the Mortgage Company, whereby it was agreed that the said Mortgage Company would give full credit to the plaintiffs for all sums paid upon the first and second lien notes, with interest of not more than 8 per cent.; the Mortgage Company, in said new arrangement, to secure title to all outstanding notes and liens against

the property and accept a new note signed by said G. R. Wimbish and wife, secured by the new deed of trust, representing the principal balance of the indebtedness after all due credits were made, said new note to bear 7 per cent. interest per annum. Said motions further alleging that, pursuant to said agreement, the Mortgage Company did actually acquire title to all outstanding notes and liens, and that G. R. Wimbish and wife, plaintiffs, did make two payments of $55 each to the Mortgage Company, according to the terms of said alleged agreement. That plaintiffs later refused to execute the new note and deed of trust, but that, under all the facts, the acts of said Wimbish were tantamount to a novation, which plaintiffs later failed to perform. Waiver and failure of the plaintiff G. R. Wimbish to ever repudiate the sales contract was also alleged. Defendant Costa's motion non obstante veredicto was to the effect that he was entitled to the affirmative relief prayed for therein under the undisputed evidence. These motions were in compliance with article 2211, R.S., as amended by Acts 1931, c. 77, § 1, Vernon's Ann.Civ.St. art. 2211, and the final judgment of the trial court denied said motions non obstante veredicto, to which exceptions were duly taken. The judgment further found in favor of plaintiffs against the Building Company and the Mortgage Company, in the sum of $2,877.73, fixing such as the amount of moneys paid by plaintiffs to the said defendants, with 6 per cent. interest to date of judgment, and 6 per cent. thereafter until paid; rescinding and canceling all notes and liens, including the $250 chattel mortgage note of Aubrey M. Costa, rents in the amount of $2,417, for which the defendant Building Company and Mortgage Company should have credit, and decreeing title to the property in suit in the Building Company, and ordering the receiver to file a final report. Later, in March, 1936, said receiver filed a report prior to his discharge, showing that he had received nothing during such receivership, but that he "had paid out the sum of $10 for receiver's bond, and spent time and money in attempting to collect revenue from the property." From the record, the last persons in charge of and collecting rents from the property were the plaintiffs, Mr. and Mrs. Wimbish.

Under appellants' fourteen assignments of error are grouped six propositions of law, to the effect that plaintiffs were precluded from asserting a rescission and cancellation, (1) because of the alleged novation between the Mortgage Company and Wimbish, above detailed, and performance thereunder by the Mortgage Company, with partial performance by Wimbish; (2) if the above premise be not established, then there was a waiver to the same effect; or (3) if no waiver existed, then there was no timely repudiation by plaintiffs prior to the purchase of the first lien note; and (4) the judgment against the defendant corporations was palpably excessive under the pleadings and proof; and (5) a $200 fire damage loss should not have been credited plaintiffs in the absence of proof of repairs to such amount; and (6) because no legal ground was shown under the record for the cancellation of the Costa $250 mortgage note.

First for disposition herein is appellees' motion to affirm this cause, complaining of the failure by appellants to file motions for new trial; and in addition, that the assignments of error setting up waiver and estoppel were not pleaded, precluding any further consideration thereof by this court, except for fundamental error.

This cause was tried before Rule 24 for Courts of Civil Appeals and Rule 71a for District and County Courts were amended by our Supreme Court. The refusal of appellants' requested peremptory instruction by the trial judge, then, was alone sufficient to warrant a review by this court. Article 2188, R.S.; Priddy v. Childers, Tex.Com.App., 240 S.W. 1107. Such designated instruction of appellants, in addition to the affirmative relief therein sought, was a virtual demurrer to all testimony adduced on the trial, requiring us to review all of the facts, to determine whether it be predicated upon sufficient grounds; as well as to decide whether or not the issues, as found by the jury, were material and fully supported the court's judgment. This would, of course, include and involve the fact defenses raised by appellants in their assignments of error and propositions thereunder, if disclosed by this record, as a matter of law. Similarly, it is our duty to review the action of the trial court on appellants' motions non obstante veredicto, made after the jury verdict and trial. In fact, a judgment notwithstanding the verdict is unauthorized under article 2211, R.S., as amended by Acts 1931, c. 77, § 1, Vernon's Ann.Civ.St. art. 2211, unless a directed verdict would have been proper.

Appellees' motion to strike appellants' assignments is therefore overruled.

Proceeding to an examination of appellants' assignments of error and supporting propositions, the same can be more logically disposed of by reviewing the record with reference to the plaintiffs separately.

It may be well to here point out that the complaints of plaintiffs throughout this controversy are principally that a certain $200 check, following a fire damage on one of the houses, had not been credited; that the furniture note had not been given due credit out of the monthly second-lien payments of $31.40; and that interest in excess of 8 per cent. was exacted and paid on the assumed balance of the first lien note. All of the record reflects that, at the time the sales contract was executed, none of the parties thereto had access to the first lien note, same being held by a Missouri life insurance company, and appellants, in good faith, presumed that the $33.60 monthly installment, paid to such first lien holder, was in full of interest according to its terms. It later developed that said first lien note was payable semiannually as to interest, and these $33.60 payments were deposited with a Dallas Bank to the credit of the holder thereof. Apparently, such credits were applied each six months, resulting in a difference in the amount credited on the principal over the period in which the plaintiffs made payments on said first lien. Such difference about January 1, 1934, was around $99.

Now, let us consider the situation of G. R. Wimbish, the husband, during certain material phases of this controversy. From the substance of his testimony, it appears that plaintiffs began to become delinquent in regular payments in August, 1933, after unusual expenses incident to the illness of Mrs. Wimbish, and that they undertook to refinance this debt in the Home Owners Loan Corporation. The Mortgage Company, appellant, thoroughly co-operated in said efforts at refinancing; the said plaintiff testifying that, during all of such time, the differences on which his suit was later filed, were becoming known to him. By January, 1934, he became aware, through a detailed statement from the first lienholder, of the so-called excessive interest charges and the failure to credit the $200 fire insurance draft. During 1934, negotiations were continued to refinance the greater part of said debt with the Home Owners Loan Corporation,

appellant Mortgage Company consenting to a second lien for the balance. In November, 1934, the H. O. L. Corporation advised all parties that no loan was available through their agency, and the Mortgage Company became insistent as to getting the debt into current condition, or making a new adjustment of the whole matter. Such "new deal," as the parties termed it, was discussed by Wimbish and Love of the Mortgage Company, in December, 1934, wherein plaintiffs were to be given credit for everything they claimed, the Mortgage Company was to acquire the first lien note, the new debt to bear 7 per cent. interest with monthly payments thereon reduced to $55, the chattel mortgage note readjusted to begin February 1, 1935, as to the $5 payments, and an additional voluntary credit on the whole debt of $200, providing the terms of the "new deal" should be performed by the plaintiffs throughout the year 1935. This verbal proposition of the Mortgage Company was agreed to by Wimbish and a pencil memorandum made thereof. The first lien note was acquired by the Mortgage Company December 21, 1934. Wimbish made a $55 payment in December, 1934, and one in January, 1935, on the basis of the new arrangement, when Mrs. Wimbish refused to sign the necessary instruments carrying into effect the refinancing agreement. In this connection, we quote from the testimony of Wimbish, as follows:

"Q. You say you never have refused, even to this hour, to sign the new papers? A. No. * * *

"Q. As a matter of fact, when that new arrangement was worked out, you told Mr. Love and Mr. Costa you thought they had been fair in reducing the rate? A. I certainly did make that remark, because I felt that way about it.

"Q. And at that time you had no intention whatever of rescinding or repudiating the purchase of the property? A. No, sir. * * *

"Q. What I want to know is, when you decided you were going to try to turn the property back and not pay for it? A. I haven't made up my mind to that effect yet.

"Q. You haven't fully decided it yet? A. No, sir."

We have gone into rather laborious detail as to the various stages of this case, by reason of the nature of the litigation, the action of the trial court thereon, and the law questions as herein presented.

Clearly, there is no ground under the facts above whereby the plaintiff Wimbish can properly invoke the equitable doctrine of rescission. Aside from his admissions and conduct here, he took no steps toward affirmative repudiation of the entire transaction, until the defendants had proceeded to effectuate their rights through posting of notices of sale in March, 1935. Principles of equitable estoppel alone sufficiently preclude him from the relief sought. We quote from 2 Pomeroy Eq.Jur. § 804: "Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might have perhaps otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his condition for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy."

■ And, is the position of Mrs. Wimbish any more tenable in the light of all the testimony? From her husband's statement, she drew all checks for monthly payments. This would include those representing the last two payments of $55 each, after the "new deal" was approved by him. Many months before her suit was filed, the Mortgage Company had offered adjustments on all interest payments to the 8 per cent. contracted for, or less. The $405 commission note had been acquired by the Mortgage Company in strict compliance with the sales contract and the appellants claim no rights by reason of its existence. The $200 fire-loss draft had long since been applied to the principal of the first lien, and the new proposition on a 7 per cent. basis, as tendered by Mr. Love to Mrs. Wimbish, was turned down by her, because (1) the $5 each month out of the second lien payments of $31.40 were not applied on the furniture note, and (2) the interest adjustments were not credited as she wished. But no issue of fraud or misrepresentation was requested by plaintiffs, or given in the court's charge as to the application of payments on the chattel mortgage note, or as to the right of plaintiffs to demand the credits to which she referred. Such issues, therefore, passed out of the case under Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084, and cannot be here considered as an element in support of plaintiffs' claims.

■ But appellees contend that all of the testimony of the representatives of the Mortgage Company since January 1, 1934, offering to adjust the claimed excessive interest charges, and as to rewriting the entire contract, were in the nature of a compromise and settlement and, relating to real estate, were verbal and therefore inadmissible. We do not agree with such contention. All of such evidence was properly before the court and jury under the pleadings and proof, by reason of the charges of fraud and misrepresentations, and tending to show the good faith of defendants in the performance of the contract as made.

■ Finally, we think, there was no timely repudiation on the part of either of the plaintiffs. We quote from the opinion of Judge Fly, in Winters v. Coward et al., Tex.Civ.App., 174 S.W. 940, 941: "The remedy of rescission and cancellation is no prime favorite of courts, and slight circumstances, tending to show a purpose or intent upon the part of the person seeking a rescission to waive such right, will prevent the granting of the relief. The right of rescission is one that can be waived, and, when waived, the rights of the parties are placed upon a new basis. Scarborough v. Arrant, 25 Tex. 129; Moore v. Giesecke, 76 Tex. 543, 13 S.W. 290; Kallison v. Poland (Tex.Civ.App.) 167 S.W. 1104; Kempner v. Thresher Co., 54 Tex.Civ.App. 650, 118 S.W. 714; Trauzettel v. Kjellman (Tex.Civ.App.) 163 S.W. 689. The mere lapse of time goes far to establish a waiver of the right of rescission, and when taken with other circumstances, tending to show that the purchaser had, after the fraud was discovered, treated the property as his own, and had negotiations with the vendor in connection with other circumstances, would be conclusive. Crutchfield v. Stanfield, 2 Posey Tex.Unrep.Cas. 480. * * * The right of rescission can be lost merely by unreasonable delay in instituting suit, after the discovery of the fraud, or it can be lost by exercising acts of ownership over the property, contracting with the vendor in regard to it, or in the use and occupation of it, after the fraud is known to exist. The lapse of time which might destroy the right of rescission may be less than that fixed by statutes of limitation. Mere delay, however, without any accompanying circumstances tending to show a waiver, would be a question of fact to be submitted to a jury. Galveston

Railway Co. v. Cade, 100 Tex. 37, 94 S.W. 219; Texas & P. Railway Co. v. Jowers (Tex.Civ.App.) 110 S.W. 946. But where all the facts tend to show that a vendee has continued to use the property for a long while after discovery of the fraud, has made payments on the purchase money, and has made another contract with the vendor in connection with the property, a court has the authority to declare, as a matter of law, that the right of rescission has been waived." See Hallwood Cash Register Co. v. Berry, 35 Tex.Civ.App. 554, 80 S.W. 857, where facts necessary to support a proper case of cancellation and rescission are discussed, holding that, in lieu of such facts, the remedy of the complaining party to be in the nature of damages. Also see Powell et ux. v. Rockow et al., 127 Tex. 209, 92 S.W.2d 437, 439, from which we quote: "The Rockows came into a court asking it to undo their contract. In order to be entitled to that relief, it was not enough that they merely establish fraud, but the burden was upon them to disclose a situation that made it not inequitable to grant it. This principle is well established."

Plaintiffs had the burden here of going further and establishing, under the testimony and to the jury, the fact of timely repudiation. Such issue has also been waived by them, by not requesting the same, even if the evidence had justified its submission.

 Moreover, we believe that the written memorandum agreed to between Wimbish and the Mortgage Company, as to a complete readjustment of interest and refinancing of the whole indebtedness, but evidences a novation binding upon their community estate without necessity of joinder therein by Mrs. Wimbish. G. R. Wimbish was not attempting here to incumber or dispose of property affected with a homestead interest; he was merely undertaking to adjust preceding liens admittedly assumed and executed by joint action of both husband and wife. Such acts he could validly perform as an incident to his right of control and disposition of the community estate, under article 4619, R.S. as amended by Acts 1927, c. 148, Vernon's Ann.Civ.St. art. 4619. See Kenyon v. Stoufflet, Tex.Civ.App., 85 S.W.2d 303, 305, writ dismissed, where a deed of trust executed by the husband alone was held valid as against the homestead claim of the wife, where same was given in part to secure a loan to pay off prior taxes against such property. It is there stated: "But, irrespective of the state of the evidence on those questions of fact, there is an underlying rule of law that is decisive of the case, namely, that the husband, if not acting in fraud of the rights of the wife, may, without her joinder, encumber or dispose of the community homestead in the adjustment of the preceding liens or equities enforceable against it. * * * In this situation, the deeds of trust, at least to the extent of the advancement for taxes, and the deed executed by Kenyon, even without the joint execution and acknowledgement of the wife, were valid. Clements v. Lacy, 51 Tex. 150; Cooper v. Hinman (Tex.Com.App.) 235 S.W. 564; Gillum v. Collier, 53 Tex. 592; McNeal v. McCraw (Tex.Civ.App.) 15 S.W.2d 139; Driscoll v. Morris (Tex.Civ.App.) 275 S.W. 196; Hill v. Wright (Tex.Civ.App.) 30 S.W.2d 812; Speer, Law of Marital Rights in Texas (3d Ed.) p. 573, § 474."

We therefore hold that the plaintiffs failed to meet the burden devolving upon them, as a matter of law, in a suit of this character, and that the trial court erred in refusing to grant the instructed verdict for defendants Mortgage Company and the Building Company; also in failing to grant the motions non obstante veredicto of such defendants, for the reasons herein discussed.

Also, defendant Costa was entitled to an instructed verdict on the $250 chattel mortgage note, and his motion non obstante veredicto should have been granted, as prayed, the issues as found by the jury failing to connect him in any wise with the action in fraud as to the other defendants.

This case is accordingly reversed and judgment rendered for defendant Costa against plaintiff G. R. Wimbish, on the chattel mortgage note in suit, for the amount of $238.91 with 8 per cent. interest thereon from May 21, 1932, to date of judgment herein, February 29, 1936, with 10 per cent. interest thereafter, plus 10 per cent. attorney's fees as stipulated in said note; with foreclosure against both plaintiffs, G. R. and Luna Wimbish, as to the chattel mortgage lien, as prayed; for the defendant Southern Home Building Company that plaintiffs take nothing as to it. Also judgment for defendant Southern Trust & Mortgage Company against plaintiff G. R. Wimbish for $1,951.50, being the principal balance due on the first lien note after application of all credits appearing thereon, with 8 per cent. interest from Jan-

uary 1, 1935, to said February 29, 1936, and 10 per cent. thereafter, plus 10 per cent. attorney's fees as therein stipulated;. also judgment for said Southern Trust & Mortgage Company against plaintiff G. R. Wimbish for $2,143 with interest at 8 per cent. from May 12, 1934, to said February 29, 1936, and interest at 10 per cent. thereafter, plus 10 per cent. attorney's fees, as stipulated therein; and further judgment of foreclosure of the deeds of trust liens securing the payment of all the indebtedness against both plaintiffs, G. R. and Luna Wimbish.

Reversed and rendered.